Bradley L. Booke #5-1676
LAW OFFICE OF BRADLEY L. BOOKE
Box 13160
Jackson, Wyoming 83001
702-241-1631
866-297-4863 fax
brad.booke@lawbooke.com

Raeesabbas Mohamed, Esq. (AZ Bar # 027418)
*Pro Hac Vice*
**RM WARNER, PLC**
8283 N. Hayden Road, Suite 229
Scottsdale, Arizona 85258
Email: Raees@rmwarnerlaw.com
Tel: 480-331-9397
Fax: 1-866-961-4984
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# DISTRICT OF WYOMING

| | |
|---|---|
| TAN BOON KIAT, a.k.a. STEVE TAN, AS INDIVIDUAL;<br><br>Plaintiff,<br><br>V.<br><br>LUCAS EMANUEL URIA THEIS, a.k.a. LUKE BELMAR, AS INDIVIDUAL; LARA ELYSE URIA THEIS, AS INDIVIDUAL; CAPITAL CLUB LLC, A WYOMING LIMITED LIABILITY COMPANY;<br><br>Defendants. | Case No. 25-cv-00214-KHR<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |

Plaintiff Tan Boon Kiat, a.k.a. Steve Tan ("Plaintiff" or "Steve"), by and through undersigned counsel, hereby submits his Opposition to Defendants' Motion to Dismiss (Doc. 18-19) filed by Defendants Lucas Uria Theis a.k.a. Luke Belmar ("Defendant Luke"), Lara Uria Theis ("Defendant Lara"), and Capital Club LLC ("Defendant Capital Club") (collectively "Defendants").

Defendants' Motion mischaracterizes the nature of Plaintiff's claims and relies upon conclusory allegations rather than well-pled facts establishing both personal jurisdiction and viable causes of action. Plaintiff has sufficiently alleged a scheme to defraud and oust Plaintiff from his

joint venture. This Court has personal jurisdiction over Defendants, venue is proper in Wyoming, and the claims are pled with particularity to survive Rule 12(b)(6) and 12(b)(2) scrutiny.

**FACTUAL BACKGROUND**

Plaintiff Steve and Defendant Luke began a joint online business venture in 2022 called Capital Club. To support the venture, the parties chose to use a Wyoming limited liability company that Defendant Luke had formed in 2021, Capital Club LLC. *See* Declaration of Steve Tan ("Declaration") ¶2, Exhibit 1. The Wyoming entity was intended to serve as a central financial and operational vehicle, and Defendants knowingly relied on Wyoming's LLC framework to structure their business activities. *See* Declaration ¶¶9-10, 15.

Soon after forming the Capital Club venture with Steve, Defendant Luke arranged to transfer his membership interest in the Wyoming LLC to Defendant Lara for tax purposes. *See* Declaration ¶19, Exhibit 12. As reflected in their communications, Defendant Luke sought to maintain eligibility for Puerto Rico Act 60 tax status and believed that removing his name as a member of a Wyoming LLC would help preserve that treatment. *See* Declaration ¶18, Exhibit 5.

Although ownership was placed in Defendant Lara's name, control of the venture did not change. Defendants Luke and Lara continued to direct all business decisions, financial operations, and communications for Capital Club. Defendant Lara's role as an agent of Capital Club explains why she appears as a signatory on behalf of Capital Club on its contracts and administrative documents. *See* Declaration ¶17, Exhibit 11. Defendant Lara's February 16, 2023, email confirms that Capital Club was being used for Luke and Steve's joint 50-50 venture and that Defendant Luke intended to take advantage of Puerto Rico tax benefits while also taking advantage of benefits conveyed through forming the Wyoming entity. *See* Declaration ¶18, Exhibit 5.

Defendant Luke also remained directly tied to the Wyoming company, Capital Club LLC, as its principal and operator. He filed or caused the filing of Defendant Capital Club's annual reports with the Wyoming Secretary of State from 2022 through 2025. *See* Declaration ¶¶12-13, Exhibits 7-8. Defendant Luke deliberately chose Wyoming as the governing law with Wyoming as the venue for all disputes in his Promissory Note with Defendant Capital Club in which he loaned Defendant Capital Club $50,000.00. *See* Declaration ¶14, Exhibit 9. This agreement demonstrates that Luke

was prepared to be haled into Wyoming business activities with Capital Club LLC, and that he intended for Defendant Capital Club to be subject to Wyoming law and venue. *See* Declaration ¶15, 26-27.

Capital Club served as the critical operational hub of the parties' venture. *See* Declaration ¶27. Defendants used the Wyoming LLC to enter into contracts, receive substantial payments, manage business accounts, and hold its proprietary systems developed for the business. *See* Declaration ¶¶5, 14, 17, 20-21, 23, Exhibits 1, 9, 11, 13-14, 16. The parties chose Wyoming law to govern their internal rights and membership interests under Wyo. Stat. Ann. § 17-29-106—rights first held by Defendant Luke and then transferred to Defendant Lara. *See* Declaration ¶¶5, 19, 23, Exhibits 3, 12, 16. Defendants consistently relied on the Wyoming LLC's legal status while conducting business. *See* Declaration ¶¶10, 14, 15, 18-20, 24, 26-27, Exhibits 5, 9, 12-13.

Defendants Luke and Lara used the Wyoming entity to engage in the misconduct alleged in the Complaint. For example, Defendants Luke and Lara diverted funds from Capital Club's accounts for personal use, altered or concealed financial records, routed money through undisclosed channels, and removed Steve's administrative access to company systems. *See* Complaint ¶¶68–69, 71–77, 91–100, 106–107, 123–124, 132. These actions targeted the assets, governance rights, and financial interests associated with the Wyoming LLC.

As part of his illegal takeover and diversion scheme, Defendant Luke directed company operations through Capital Club, managed its accounts, and usurped its systems and opportunities. *See* Declaration ¶¶5, 14-15, 17, 20-21, 25-27, Exhibits 3, 5-6, 9, 11, 13, 14. Defendant Lara executed the September 8, 2024, lockout of Steve, changed login credentials, and authorized transfers from Defendant Capital Club's accounts. *See* Complaint ¶¶54, 68–77.

Defendant Capital Club functioned as Defendant Luke and Lara's alter ego rather than a separate business entity. The company had no independent offices or decision-makers; business decisions were made personally by Defendants Luke and Lara, and business funds were commingled or transferred between their personal accounts and the LLC. *See* Complaint ¶¶49–50, 72–77, 94–110. The limited business records in Steve's possession further demonstrate a lack of corporate separateness, such as Luke and Lara using the LLC for their personal expenses and Capital Club

business conduct. *See* Declaration ¶20, Exhibit 13, pages 3-7.

In sum, the facts demonstrate that Defendants deliberately chose the privilege of doing business in Wyoming, consummated key business functions through the Wyoming LLC, relied on Wyoming law to govern the venture, and engaged in the misconduct alleged by and through the Wyoming entity, causing injury arising out of these acts. Now, they regret creating those Wyoming-based ties to dodge personal jurisdiction. Taken as true, the documentary evidence and the facts pled in the Complaint satisfy the prima facie showing of personal jurisdiction over the Defendants.

## LEGAL ARGUMENTS

**I.    This Court has general and specific personal jurisdiction over Defendant Capital Club LLC and specific personal jurisdiction over Defendants Luke and Lara.**

### A.    Standard of Review for Personal Jurisdiction.

"Where a district court considers a pre-trial motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." *AST Sports Sci., Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1056–57 (10th Cir. 2008). The plaintiff may carry this burden "by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *TH Agric. & Nutrition, LLC v. Ace European Grp. Ltd.*, 488 F.3d 1282, 1286 (10th Cir. 2007) (internal quotation marks omitted). "All factual disputes are resolved in favor of the plaintiff [ ] when determining the sufficiency of this showing." *Rusakiewicz v. Lowe*, 556 F.3d 1095, 1100 (10th Cir. 2009).

"The law of the forum state and constitutional due process limitations govern personal jurisdiction in federal court." *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017). Wyoming's long-arm statute extends the jurisdictional reach of Wyoming courts as far as constitutionally permissible. Wyo. Stat. § 5-1-107. Accordingly, exercising jurisdiction is allowed to the extent it does not offend the Due Process Clause of the Fourteenth Amendment to the Constitution.

A court may exercise personal jurisdiction where (1) the defendant has minimum contacts with the forum State, and where (2) the assertion of personal jurisdiction is reasonable and comports

with fair play and substantial justice. *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir.1998) (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945))).

With respect to the first prong, a plaintiff satisfies the minimum-contacts standard for specific jurisdiction by showing that: (1) the defendant has "purposefully availed itself of the privilege of conducting activities or consummating a transaction in the forum state," *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008); and (2) " 'the litigation results from alleged injuries that arise out of or relate to those activities,' " *TH Agric. & Nutrition*, 488 F.3d at 1287 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

The minimum contacts "must show that the defendant deliberately 'reached out beyond' its home—by, for example, 'exploi[ting] a market' in the forum State or entering a contractual relationship centered there." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)). "[A] strict causal relationship" is not required, but the suit must "arise out of or relate to the defendant's contacts with the forum." *Id.* at 362.

"In proper circumstances, even a single letter or telephone call to the forum state may meet due process standards." *Rambo v. Am. S. Ins. Co.,* 839 F.2d 1415, 1418 (10th Cir. 1988). "The proper focus for analyzing these contacts is whether they represent an effort by the defendant to 'purposefully avail[ ] itself of the privilege of conducting activities within the forum State.' " *Id.* at 1419.

A plaintiff may also establish minimum contacts through purposeful direction by showing that the defendant committed intentional conduct expressly aimed at Wyoming, the forum state that is "the focal point both of the story and of the harm suffered." *Calder v. Jones*, 465 U.S. 783, 789 (1984).

With respect to the second prong of whether jurisdiction is "reasonable" and comports with "fair play and substantial justice," the Court has identified several factors: (1) the forum state's interest in adjudicating the dispute; (2) the plaintiff's interest in obtaining convenient and effective relief; (3) the interstate judicial system's interest in obtaining the most efficient resolution of

controversies; and (4) the shared interest of the several states in furthering fundamental social policies. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980).

Wyoming's exercise of jurisdiction over all three Defendants is reasonable and comports with fair play and substantial justice under the factors listed above. Wyoming has a strong and direct interest in adjudicating disputes concerning the misuse, governance, and internal affairs of a Wyoming LLC, as well as the diversion and appropriation of its assets and opportunities. No other jurisdiction has a closer relationship to the claims because the entity at the center of the wrongdoing was created under Wyoming law. Litigating in Wyoming also provides the parties with the most convenient and effective forum to grant complete relief, and it allows all claims against all Defendants to be heard and resolved together, promoting judicial efficiency and avoiding inconsistent outcomes.

**B.     This Court has general and specific personal jurisdiction over Defendant Capital Club because it is a Wyoming LLC whose formation, governance, and misuse occurred in this forum.**

**1.     General jurisdiction exists because Defendant Capital Club is "at home" in Wyoming as a domestic LLC.**

Defendant Capital Club is indisputably subject to personal jurisdiction in Wyoming. As a limited liability company organized under Wyoming law, Capital Club purposefully availed itself of the benefits and protections of Wyoming's statutory framework, including its favorable LLC governance structure, asset protections, and privacy provisions. By choosing to incorporate in Wyoming and maintain a registered agent within the state, Capital Club created a deliberate and ongoing relationship with Wyoming that makes it "at home" in the forum. *See* Declaration ¶¶2-4, 10-13, Exhibits 1-2, 7-8.  The claims in this case arise directly from the misuse and operation of that Wyoming entity. More specifically, they arise from the diversion of its funds, the manipulation of its records, and the abuse of its Wyoming registration to facilitate fraud. *See* Complaint ¶¶12, 68-75. These facts render Capital Club a resident defendant squarely within the personal jurisdiction of Wyoming courts.

Federal and Wyoming precedent confirm that a Wyoming-organized LLC is subject to general jurisdiction in Wyoming. In *Avus Designs, Inc. v. Grezxx, LLC*, 644 F. Supp. 3d 963, 978

(D. Wyo. 2022), the District of Wyoming held as a matter of first impression that an LLC is "at home" in its state of organization and therefore subject to general personal jurisdiction there. The court identified several policy justifications supporting general jurisdiction over domestic LLCs.

First, an LLC "intentionally chooses to create a relationship with the state of organization, presumably in part to obtain the benefits of that state's substantive and procedural laws." *Avus Designs, Inc.*, 644 F. Supp. 3d at 981. Second, an LLC "cannot ever be absent from the state of incorporation." *Id.* Third, even if the LLC does not have a physical office in Wyoming or do business in Wyoming, "the organization process provides at least some notice of the potential for jurisdiction." *Id.* Finally, "the LLC is likely to be familiar with the organizing state's laws, having just organized there." *Id.* Wyoming's constitutional-maximum long-arm statute, Wyo. Stat. § 5-1-107, further supports jurisdiction on any basis consistent with due process, and state law mandates that every LLC maintain a registered agent authorized to receive service of process within Wyoming, Wyo. Stat. § 17-29-113. Together, these authorities establish that a domestic LLC is presumptively subject to general jurisdiction in Wyoming regardless of where its day-to-day operations occur.

In light of these principles, general jurisdiction over Defendant Capital Club is proper. The company's legal identity, internal affairs, membership rights, and governance structure are all located in Wyoming by operation of the Wyoming Limited Liability Company Act, including its governing-law provisions. *See* Declaration ¶¶ 2, 5, 17, 19, 23, Exhibits 1, 3, 11, 12, 16. Wyo. Stat. Ann. § 17-29-106. Defendant Capital Club chose to exist as a Wyoming LLC and to invoke the benefits of Wyoming's corporate law. For this reason alone, it is properly haled into court in this District.

### 2. Specific jurisdiction also exists because the claims arise directly from Defendant Capital Club's misuse, diversion of assets, and fraudulent operation through its Wyoming domicile.

Even if general jurisdiction were not dispositive, specific jurisdiction over Defendant Capital Club exists because Plaintiff's claims arise from conduct expressly tied to the Wyoming entity. Specific jurisdiction requires that the defendant purposefully direct activities to the forum and that the claims arise out of or relate to those activities. Plaintiff satisfies both requirements. *See OMI Holdings, Inc.*, 143 F.3d at 1091; *TH Agric. & Nutrition*, 488 F.3d at 1287; *Calder*, 465 U.S. at 789.

The complaint alleges that Defendant Capital Club served as the primary instrument through which Defendants Luke and Lara diverted funds, manipulated business records, excluded Plaintiff from governance, routed payments through concealed channels, and operated a competing business using the Wyoming LLC's infrastructure. *See* Complaint ¶¶39–49, 50–69, 71–78.

Every wrongful act alleged in this litigation was conducted through or within the Wyoming LLC. The misuse of Capital Club LLC is conduct purposefully directed at Wyoming because the Wyoming entity's governance rights, membership interests, and financial assets are situated in this State as a matter of law. *See Avus Designs, Inc.*, 644 F. Supp. 3d at 981; *see* Declaration ¶¶5, 15, 27, Exhibit 3. When Defendants Luke and Lara diverted or concealed Defendant Capital Club's assets, they necessarily directed their conduct toward Wyoming, where the LLC exists and where its corporate rights are located.

These Wyoming-directed acts further satisfy the requirement that the claims arise out of or relate to the defendant's forum contacts. Plaintiff's claims for fraudulent inducement, conversion, breach of fiduciary duties, unjust enrichment, and civil conspiracy arise directly from the misuse and collapse of the Wyoming LLC and its assets. The Wyoming entity sits at the center of the operative facts: its funds were diverted, its records manipulated, its assets transferred, and its governance rights stripped from Plaintiff through fraudulent means. *See* Complaint ¶¶12, 68-75. The nexus between Defendant Capital Club's forum contacts and the claims is therefore direct and undeniable.

For these reasons, Defendant Capital Club is subject to both general and specific jurisdiction in Wyoming, and the Court may exercise personal jurisdiction over it on an independent basis.

**C.** **This Court has specific personal jurisdiction over Defendant Luke because he purposefully availed himself of Wyoming law, purposefully directed tortious conduct at a Wyoming LLC, the claims arise directly from those Wyoming-centered acts, and jurisdiction is fair and reasonable.**

**1.** **Defendant Luke purposefully availed himself of Wyoming law by deliberately forming, controlling, and using a Wyoming LLC.**

Specific jurisdiction over Defendant Luke is proper under Wyoming's three-part test for specific jurisdiction reaffirmed in *TEP Rocky Mountain LLC v. Record TJ Ranch Ltd. Partnership*, 516 P.3d 459, 468 (Wyo. 2022): (1) the defendant must have purposefully availed himself of the

privilege of acting in Wyoming, (2) the cause of action must arise from consequences in Wyoming of the defendant's activities, and (3) the defendant's actions must have a substantial connection with Wyoming to make jurisdiction reasonable. Courts applying this standard have upheld jurisdiction where defendants used a Wyoming business vehicle to conduct operations or cause harm. *See also Calder*, 465 U.S. at 783 (finding jurisdiction when defendants expressly aimed tortious conduct at a forum-based entity). Luke's deliberate formation and use of a Wyoming LLC to engage in tortious conduct satisfies purposeful availment.

Defendant Luke purposefully availed himself of the benefits of Wyoming's laws by creating, controlling, and using a Wyoming LLC (Capital Club) to carry out his business dealings and, ultimately, the wrongful acts alleged in the complaint. *See* Declaration ¶¶2-4, 10-13, Exhibits 1-2, 7-8. He deliberately chose Wyoming as the legal home for his venture, used its statutory protections to structure ownership and finances, and then exploited that Wyoming entity to divert funds and exclude Plaintiff from control. *See* Complaint ¶¶46, 53, 71, 120. Under *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985), Luke's intentional affiliation with Wyoming law and his use of a Wyoming entity make it foreseeable that he would be haled into court here for disputes arising from that enterprise. Notably, Luke drafted and executed contracts to avail himself of Wyoming law and venue. *See* Declaration ¶¶5, 10, 14-15, Exhibits 3, 9. Also under *Burger King*, the absence of in-state visits does not defeat jurisdiction where a defendant "deliberately established" significant contacts with the forum. *Burger King*, 471 U.S. at 476 ("It is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted."). Defendant Luke's conduct satisfies purposeful availment standards: he used Wyoming's LLC structure as the focal point of a fraud that caused harm through a Wyoming company.

Defendant Luke intentionally accepted the long-term benefits of conducting business activities under Wyoming law. He and Defendant Lara chose to organize the LLC there and form Capital Club business contracts under Wyoming law. *See* Declaration ¶¶5, 14, 17, 23, Exhibits 1, 9, 11, 16. The "quality and nature" of his relationship to the company in Wyoming can in no sense be

viewed as "random," "fortuitous," or "attenuated." *Hanson v. Denckla,* 357 U.S. 235, 253 (1958); *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774 (1984); *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 299 (1980).

> **2. Defendant Luke also purposefully directed intentional torts at Wyoming because his misconduct was expressly aimed at the Wyoming LLC that he created as the vehicle for the fraud.**

Defendant Luke's intentional acts were expressly aimed at Wyoming because they were directed at and carried out through a Wyoming LLC, whose rights, interests, and assets are governed in this forum under the Wyoming LLC Act. Each of Plaintiff's intentional tort claims arises from conduct that was purposefully directed at the Wyoming entity itself. For fraudulent inducement, Defendant Luke used the Wyoming LLC as the mechanism for the buyout promise by inducing Plaintiff to transfer Capital Club's Wyoming-governed rights and operational control to him. *See* Complaint ¶¶ 84-87. For conversion, Defendant Luke diverted and exercised dominion over funds and assets belonging to the Wyoming LLC, intentionally interfering with property situated within Wyoming's statutory governance framework. *Id.* ¶¶ 91-100. For breach of fiduciary duty, Defendant Luke directed his misconduct at Capital Club's internal affairs by excluding Plaintiff from managerial rights and misappropriating corporate opportunities and funds of the Wyoming company. *Id.* ¶¶ 106-109, 117-126. For unjust enrichment, Defendant Luke obtained benefits derived from the use and control of the Wyoming LLC's assets, infrastructure, and revenues while depriving the Wyoming entity of its rightful value. *Id.* ¶¶ 129-135. For civil conspiracy, Defendant Luke coordinated with Defendant Lara to carry out a series of intentional acts aimed at the Wyoming LLC, including the takeover of its accounts and the redirection of its assets. *Id.* ¶¶ 138, 142-144.

By diverting company funds, manipulating accounts, excluding Plaintiff from governance, and transferring assets through the Wyoming entity, Defendant Luke targeted a business interest located in Wyoming. These were intentional acts expressly aimed at a Wyoming company, and the resulting injury was felt in the forum where the LLC is domiciled and governed. This conduct satisfies the *Calder* purposeful-direction standard.

/ / /

**3. Plaintiff's claims and injuries arise directly out of the consequences of Defendant Luke's Wyoming contacts because every cause of action is grounded in his misuse and abuse of the Wyoming LLC and its assets.**

Here, the second element of the minimum-contacts test is also satisfied because Plaintiff's claims arise from the consequences of Defendant Luke's activities in Wyoming. *Burger King*, 471 U.S. at 472. Plaintiff's claims do not concern independent or free-floating disputes, but instead arise directly from Defendant Luke's intentional decision to structure, operate, and execute the challenged conduct through the Wyoming LLC that he selected and used as the core vehicle of the venture. All of Plaintiff's causes of action (fraudulent inducement, conversion, breach of fiduciary duty of care and loyalty, unjust enrichment, and civil conspiracy) stem from the misuse of the assets of the Wyoming LLC that Defendant Luke formed and controlled.

Defendant Luke used the Wyoming entity to route payments, alter ownership control, remove Plaintiff's access, and conceal transfers. These actions were possible only because Defendant Luke invoked the authority and structure of the Wyoming LLC, meaning the alleged injuries would not have occurred but for his use of this Wyoming corporate vehicle. The litigation arises directly from the diversion of Capital Club's assets, the fraudulent inducement through the company, the breaches of fiduciary duty owed through the venture, and the conspiracy carried out through the company's accounts and records. The Wyoming LLC was the primary instrumentality of the wrongful conduct and the locus of the harm. Under *Burger King*'s "arise out of or relate to" standard, this direct nexus satisfies the claim-relatedness requirement.

**4. Exercising jurisdiction over Luke is reasonable because alter-ego principles apply and Wyoming has a strong interest in adjudicating misconduct involving a Wyoming LLC.**

Assuming, *arguendo*, that the aforementioned intentional acts by Luke do not establish a prima facie showing of why personal jurisdiction over Defendant Luke is proper, exercising jurisdiction over Luke is still reasonable on other grounds. Plaintiff can establish a prima facie showing of alter ego liability against Luke, and thus Capital Club's contacts should be attributed to Luke (and Lara). *See Christian v. Loyakk, Inc.*, 650 F. Supp. 3d. 1242, 1264–66 (D. Wyo. 2023).

Here, the LLC's contacts with the forum state become the individual's if alter ego is pled and established. Courts have recognized that LLC members may be held personally liable for the

LLC's actions if the entity is misused in a manner that leads to fraud, injustice, or inequity. For example, the Supreme Court of Wyoming has held that the veil of an LLC may be pierced when the LLC is owned, influenced, and governed by its members to the extent that the required separateness ceases to exist due to **misuse of the LLC**, and when adherence to the fiction of its separate existence would lead to injustice or inequity. *See GreenHunter Energy, Inc. v. Western Ecosystems Technology, Inc.*, 337 P.3d 454, 462 (2014). Similarly, the court in *Kaycee Land and Livestock v. Flahive* stated that individual LLC members could be held personally liable for damages to third parties when the LLC has **committed fraud**. *See Kaycee Land and Livestock v. Flahive*, 46 P.3d 323, 325 (2002). An individual loses protection of the corporate entity by "unauthorized diversion of corporate funds or assets to other than corporate uses; ... the treatment by an individual of the assets of the corporation as his own; ... the identification of the equitable owners thereof with the domination and control of the two entities; ... the diversion of assets from a corporation by or to a stockholder or other person or entity, to the detriment of creditors." *Id*.

Similarly, in *Christian v. Loyakk, Inc.*, the plaintiff alleged that individual defendants did not distinguish the corporations from their own personal interests, diverting the corporations' assets to themselves or other entities that they respectively owned. *Christian v. Loyakk, Inc.*, 650 F. Supp. 3d 1242, 1264–66 (D. Wyo. 2023). The plaintiff further alleged that this worked a fraud on the plaintiff because, despite the individual defendants promising him on behalf of the corporation to pay him in the future, the company never did. *Id.*

Here, like in *GreenHunter*, *Kaycee*, and *Christian*, Defendant Luke has both misused the LLC for personal affairs (Complaint ¶¶89–102, 103–127, 132) and committed fraud through it. *See* Complaint ¶¶80–88. The Complaint alleges that when Defendant Luke demanded transfer of operational control, he *never intended* to execute the buyout agreement. *See* Complaint ¶¶63–67. A misrepresentation of present intent is actionable fraud. *Excel Constr., Inc. v. HKM Eng'g*, 228 P.3d 40, 48 (Wyo. 2010) ("false representation intended to induce action"). Thus, because fraud is sufficient to impose alter ego liability, Defendant Luke is liable under Capital Club LLC and is subject to personal jurisdiction. Just as in *Christian*, Defendant Luke defrauded Plaintiff because, despite promising to pay Plaintiff in the future on behalf of Defendant Capital Club, Defendants

never did.

Similarly, Defendant Luke also used corporate funds for personal purposes. *See* Declaration ¶20, Exhibit 13, pages 3-7. Accordingly, the Court can disregard the LLC for purposes of establishing personal jurisdiction over Luke.

**D.    This Court has specific personal jurisdiction over Defendant Lara because she purposefully availed herself of Wyoming law, purposefully directed tortious conduct at a Wyoming LLC, the claims arise directly from those Wyoming-centered acts, and jurisdiction is fair and reasonable.**

**1.    Defendant Lara purposefully availed herself of Wyoming law by owning, controlling, and operating a Wyoming LLC.**

Defendant Lara is likewise subject to personal jurisdiction because she assumed ownership of and exercised control over Capital Club, a Wyoming LLC, and used that entity to further the tortious scheme. As alleged, Defendant Lara acted not as a passive spouse or nominal owner, but as the person who held legal title to the Wyoming LLC, locked Plaintiff out of company systems, managed financial transfers, and used the company's accounts to move misappropriated funds. *See* Complaint ¶¶12, 73, 77, 95, 112; *see* Declaration ¶¶16-19, 23. By assuming ownership and operational authority over a Wyoming entity and using that entity to exclude Plaintiff and redirect company assets for personal gain, Defendant Lara purposefully availed herself of the benefits and protections of Wyoming law. It was entirely foreseeable that she could be haled into a Wyoming court for disputes arising from the misuse of a Wyoming LLC. She cannot both exploit Wyoming's entity protections, transact business through the Wyoming LLC, and simultaneously disclaim accountability in Wyoming courts.

**2.    Defendant Lara purposefully directed intentional torts at Wyoming because the misconduct was expressly aimed at a Wyoming LLC and its assets.**

The allegations also satisfy the purposeful-direction analysis because they show that Defendant Lara's intentional actions were expressly aimed at Wyoming. Her acts involved a Wyoming LLC whose internal affairs, financial accounts, membership rights, and governance structure are located in Wyoming. *See* Declaration ¶¶16-19, 22-23, Exhibits 5, 10-12, 15-16. By executing or directing the lockout of Plaintiff from the company's systems, authorizing transfers of

company assets, and helping route funds through concealed channels, Defendant Lara directed her conduct at a Wyoming entity and at business interests legally sited in Wyoming. *Id.* The alleged acts of exclusion, diversion, and concealment were not abstract or generalized; they were targeted at the property and governance rights of a Wyoming LLC, making Wyoming the focal point of the tortious conduct.

Lara conspired to implement a scheme with Luke to fraudulently induce Plaintiff to transfer assets by using the Wyoming LLC to obtain control over Plaintiff's access credentials, assets, and operational systems contributed. Complaint ¶¶ 68-69. For conversion, she exercised dominion over Capital Club's Wyoming-sited systems by authorizing transfers and restricting access to accounts governed by Wyoming law. *Id.* ¶¶71-77, 91-100; *see* Declaration ¶¶16-19, 23. For unjust enrichment, she personally accepted benefits obtained through Capital Club's Wyoming accounts and business operations. *See* Complaint ¶¶131-135; *see* Declaration ¶20. For civil conspiracy, she coordinated with Defendant Luke to execute overt acts that centered on the manipulation and misuse of a Wyoming company. *See* Complaint ¶¶138-143; *see* Declaration ¶¶25-26. These acts make Wyoming the focal point of the conduct and the resulting harm, satisfying the *Calder* purposeful-direction standard.

### 3. Plaintiff's claims arise directly from Defendant Lara's Wyoming contacts because the misconduct was carried out through and upon the Wyoming LLC that she controlled.

The second element of the specific-jurisdiction inquiry is met because Plaintiff's claims arise out of or relate directly to Defendant Lara's Wyoming-based contacts. *Burger King*, 471 U.S. at 472. Like Luke, each cause of action against Lara in the complaint stems from her misuse of Capital Club, the Wyoming entity that she legally owned and operationally controlled, bearing the titles "Director" and "Chief of Staff" among others. *See* Declaration ¶¶16-19, 22-23, Exhibits 5, 10-12, 15-16. Her actions in removing Plaintiff, altering access credentials, diverting funds, and concealing financial activity were all executed through the **Wyoming** company. *Id.*; *see* Complaint ¶¶69, 76-79, 139, 142. The harm alleged by Plaintiff is the loss of control, assets, revenue, and governance rights belonging to the **Wyoming** LLC. This relationship between Defendant Lara's forum-directed conduct and Plaintiff's claims is therefore direct and substantial. The misconduct alleged would not

have occurred but for Defendant Lara's use of the **Wyoming** LLC as the mechanism for excluding Plaintiff and diverting company assets.

### 4. Exercising jurisdiction over Defendant Lara is reasonable because alter-ego principles apply and the Wyoming LLC's contacts are imputable to her.

Veil-piercing and alter-ego principles provide an independent basis for personal jurisdiction over Defendant Lara. The Tenth Circuit recognizes that when an individual so dominates and controls a business entity that the entity has no separate existence, the entity's forum contacts are imputed to the individual for jurisdictional purposes. *Gas Sensing Tech. Corp. v. Ashton*, 795 F. Appx. 1010, 1015–16 (10th Cir. 2020). Wyoming law follows the same rule: when the unity of interest between an individual and an LLC is so complete that the LLC is the individual's instrumentality, courts may disregard the company's separate existence. *See Ten Mile Indus. Park v. Western Plains Serv. Corp.*, 810 F.2d 1518, 1524 (10th Cir. 1987).

Federal courts in this district have applied the same alter-ego analysis when determining personal jurisdiction over corporate officers. *See Christian v. Loyakk, Inc.*, 650 F. Supp. 3d 1242, 1264–66 (D. Wyo. 2023) (piercing the veil for jurisdiction when the individual defendant exercised personal control over the Wyoming entity and used it to carry out the alleged misconduct). These cases hold that when an individual uses a Wyoming company as a vehicle to commit torts, the company's Wyoming contacts are attributable to the individual.

The facts here satisfy the standards for finding personal jurisdiction via alter ego liability. Defendant Lara was the sole listed owner of Capital Club, held the authority to control the company's accounts, and personally executed or directed the administrative lockout that excluded Plaintiff from the business. *See* Complaint ¶54. She oversaw transfers from the Wyoming LLC's accounts, participated in routing funds through concealed channels, and used the Wyoming entity to receive, control, and divert assets belonging to the company. *Id.* ¶¶72–77, 94–110. The complaint alleges that Capital Club lacked meaningful corporate separateness and functioned as an instrument of Luke and Lara's personal operations, rather than as an independent company. *Id.* ¶¶49–50, 68–77. These allegations establish unity of interest and domination sufficient to attribute the Wyoming LLC's forum contacts to Defendant Lara.

Because Plaintiff's claims arise directly from Defendant Lara's use of a Wyoming LLC to commit the alleged wrongdoing, and because the LLC's Wyoming contacts are properly imputed to her under alter-ego principles, the exercise of personal jurisdiction over Defendant Lara is consistent with due process. Her deliberate use of a Wyoming business entity as the vehicle for fraud—the exclusion, diversion, and concealment underlying every cause of action—makes Wyoming a proper and foreseeable forum for her to be haled into court.

**II.    Diversity jurisdiction provides an independent and sufficient basis for federal jurisdiction.**

Diversity jurisdiction under 28 U.S.C. § 1332 provides an independent and sufficient basis for federal jurisdiction in this case because Plaintiff is a citizen of Singapore, while Defendants Luke and Lara are citizens of Puerto Rico, and Defendant Capital Club is a Wyoming LLC whose citizenship is determined by its members, Defendants Luke and Lara. The amount in controversy far exceeds the statutory threshold of $75,000. Accordingly, the Court has original jurisdiction under 28 U.S.C. § 1332 without any reliance on supplemental jurisdiction.[1]

**III.    Jurisdictional discovery is warranted because it will provide the factual record needed to resolve Defendants' disputed forum contacts.**

If the Court has any doubt about the factual basis for personal jurisdiction, Plaintiff respectfully requests leave to conduct targeted jurisdictional discovery. Plaintiff satisfies both elements the Tenth Circuit requires: (1) a legal entitlement to discovery and (2) a showing of how denial would cause prejudice. *Grynberg v. Ivanhoe Energy, Inc.*, 490 F. App'x 86, 103 (10th Cir. 2012). Plaintiff's jurisdictional allegations are more than colorable, and Defendants have exclusive possession of information necessary to confirm the extent of their Wyoming contacts, their purposeful availment of Wyoming law, and Capital Club's status as their alter ego. The Tenth Circuit has held that denial of jurisdictional discovery constitutes an abuse of discretion when the denial results in prejudice to a litigant. *Sizova v. Natl. Inst. of Standards and Tech.*, 282 F.3d 1320, 1326 (10th Cir. 2002). Prejudice exists if either the pertinent jurisdictional facts are controverted or a more

---

[1] The reference in Paragraph 10 of the Complaint to supplemental jurisdiction based on federal securities laws was inadvertent. Plaintiff is amending the Complaint to remove Paragraph 10 entirely.

satisfactory showing of the facts is necessary. *Health Grades, Inc. v. Decatur Meml. Hosp.*, 190 F. Appx. 586, 589 (10th Cir. 2006).

Here, Plaintiff has identified with specificity the information that limited discovery would uncover. Discovery would illuminate the full scope of Capital Club's operations, including financial accounts, payment processors, data systems, and servers used by the Wyoming LLC; communications showing Defendants' rationale for choosing Wyoming as the company's domicile, which will reveal purposeful availment; and the flow of funds from Capital Club's accounts to Defendants personally; and communications with Wyoming service providers.

Discovery will also reveal the lack of corporate formalities observed by Defendants, including whether Capital Club had any independent existence or whether it functioned as a conduit for Defendants' personal use. Records relating to whether Capital Club maintained any Wyoming-based accounts, service providers, or business relationships would further clarify Defendants' forum-related conduct. This information is entirely within Defendants' possession and would verify the jurisdictional allegations already alleged in the complaint, including the misuse of a Wyoming LLC, the diversion of its assets, and Defendants' control and operation of the company.

Jurisdictional discovery would also materially assist the Court by confirming facts that directly bear on the personal jurisdiction analysis. Discovery will demonstrate that the Wyoming LLC was used to carry out the misconduct alleged in the complaint, that Defendants personally used the entity to direct financial transfers and to exclude Plaintiff from governance, and that the LLC lacked any real corporate separateness from Defendants. Such evidence further supports personal jurisdiction under purposeful availment principles and under alter ego and instrumentality theories. Because these facts directly influence the jurisdictional decision, jurisdictional discovery would meaningfully alter the Court's analysis rather than serve as a speculative search.

Denying jurisdictional discovery would cause prejudice because Defendants are the exclusive source of the evidence needed to complete the jurisdictional record.

In November 2024, Defendants unilaterally terminated Plaintiff's access to his business email account "steve@capital.club" depriving Plaintiff of communications and documents central to the jurisdictional analysis, including evidence of Defendants' direction of company operations

1    through the Wyoming LLC and their repeated invocation of Wyoming law. *See* Declaration ¶2, 5,

2    14, 17, 19, 23, 25, Exhibits 1, 3, 9, 11, 12, 16. To the extent pertinent jurisdictional facts are

3    controverted, a more satisfactory showing is necessary. Discovery is essential to confirm the

4    Wyoming-centered conduct already alleged, to test the veracity of Defendants' factual assertions in

5    their motion, and to prevent Defendants from avoiding jurisdiction through unilateral control of all

6    company records. Plaintiff therefore respectfully requests that, if any factual doubt remains

7    regarding personal jurisdiction, the Court permit limited jurisdictional discovery before ruling on

8    Defendants' motion.

9
10    **IV.    Venue is appropriate in this District because Defendants' wrongful acts were executed
          through, and substantially affected, a Wyoming LLC.**

11          Plaintiff bears the burden of establishing venue over Defendants, and Plaintiff must make a

12    prima facie showing on the basis of affidavits and other written material to withstand the motion.

13    *Behagen v. Amateur Basketball Ass'n*, 744 F.2d 731, 733 (10th Cir.1984), cert. denied, 471 U.S.

14    1010, 105 S.Ct. 1879, 85 L.Ed.2d 171 (1985) (citations omitted). The allegations in the complaint

15    must be taken as true to the extent that they are uncontroverted. *Id.* Conflicting affidavits are resolved

16    in favor of the plaintiff as long as they are sufficient to withstand a contrary showing by the moving

17    party. *Id.*

18          The relevant venue statute for this matter is 28 U.S.C. § 1391(b)(2), which provides that a

19    civil action may be brought in any judicial district where a substantial part of the events or omissions

20    giving rise to the claim occurred, or where a substantial part of the property that is the subject of the

21    action is situated. Courts in this Circuit interpret § 1391(b)(2) broadly and recognize that the statute

22    requires only that a substantial part of the events or property be in the forum, not the majority. *Emps.*

23    *Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1165-66 (10th Cir. 2010); *see also Emps. Mut.*

24    *Cas. Co. v. Bartile Roofs, Inc.*, No. 07-CV-182, 2008 WL 11338653, at *3 (D. Wyo. Mar. 4, 2008)

25    ("Defendant adopts a myopic view of Plaintiff's complaint. ***The events giving rise to this litigation***

26    ***all concern Defendant's actions in this forum.*** Venue is proper in Wyoming.") (emphasis added).

27    Even where relevant conduct occurs in multiple states or where venue may be appropriate in more

28    than one district, venue is proper in any district with a significant connection to the claims. *Emps.*

*Mut. Cas. Co.*, 618 F.3d at 1166.

When determining whether a substantial part of the events gives rise to the claims, courts apply a two-step inquiry. First, they consider the nature of the plaintiff's claims and the events giving rise to them. Second, they determine whether a close nexus exists between those events and the chosen district. *Emps. Mut. Cas. Co.*, 618 F.3d at 1166. Courts evaluate the entire sequence of events, taking a qualitative, not quantitative, approach to substantiality. This requires considering where legally significant acts occurred, not merely where the parties were physically located when they executed instructions.

Capital Club's legal situs, membership rights, and governance structure are located in Wyoming under the Wyoming Limited Liability Company Act, which provides that the internal affairs of a Wyoming LLC and the liability of its members are governed by Wyoming law. Wyo. Stat. Ann. § 17-29-106. The complaint alleges that Defendants used this Wyoming entity as the vehicle to misappropriate company assets, divert revenues, restructure ownership, exclude Plaintiff from control, and carry out the wrongful acts central to each cause of action (¶¶ 25–31, 49–56, 68–77, 94–113). Because the claims arise directly from the misuse and manipulation of a Wyoming company, the events at issue concern Wyoming for purposes of section 1391(b)(2).

The substantiality inquiry is satisfied independently because Defendants repeatedly undertook legally meaningful acts in Wyoming by creating and maintaining Capital Club LLC there. The LLC's registered office is located at 1603 Capitol Avenue, Suite 310, Cheyenne, Wyoming 82001, and Defendants filed their annual reports in Wyoming for 2022 through 2025. *See* Declaration ¶2, 12, 13, Exhibits 3, 7-8. These filings, formal designations, and renewals are not administrative trivialities but corporate acts that form part of the sequence of events giving rise to the claims, including the creation, preservation, and misuse of the Wyoming entity through which the alleged wrongdoing occurred.

The complaint also alleges that Defendants' conduct substantially affected the Wyoming entity itself. Defendants diverted funds belonging to the Wyoming LLC, manipulated its financial records, used it to route transactions, and stripped Plaintiff of his rights in that company. *See* Complaint ¶¶68–77, 94–110. These allegations establish that the wrongful conduct was directed at

and carried out through a Wyoming business entity.

Defendants argue that venue is improper because "[t]here is no meaningful connection between the alleged actions of the Defendants". *See* Doc. 19 at 13(B)(1). This is not the correct standard, and Defendants misstate the statute. Venue does not depend on where Defendants happened to sit when they pressed buttons or issued instructions. It depends on where the relevant property and legal interests are located and where the harm is felt, or where a substantial part of the property that is the subject of the action is situated. *Emps. Mut. Cas. Co.*, 618 F.3d at 1166.

Here, the company at the center of the wrongdoing is domiciled in Wyoming. Plaintiff's membership interest, governance rights, financial interests, cash, property rights, and access rights all exist in and through Wyoming because Wyoming law governs the LLC. Defendants' misuse of that company and those assets is therefore a substantial event occurring in this District.

Considering the entire sequence of events and applying the qualitative substantiality analysis required under § 1391(b)(2), Wyoming has a clear and significant nexus to the claims. The formation, governance, legal status, and misuse of a Wyoming LLC are central to every cause of action. These facts independently establish that venue is proper in this District.

Finally, to the extent Defendants challenge venue based on the presence of multiple entities named Capital Club, that argument raises factual issues inappropriate on a motion to dismiss. Plaintiff alleges a single venture operated through a Wyoming LLC (*see* Complaint ¶30-32), and at this stage, those allegations must be accepted as true. Because the case concerns the wrongful use and diversion of the assets of a Wyoming business entity, venue is proper under section 1391(b)(2).

**V.     Plaintiff has stated plausible, well-supported claims for relief, and Defendants' attempt to dismiss these fact-intensive issues at the pleading stage is inappropriate.**

"A judge ruling on a defendant's motion to dismiss a complaint, 'must accept as true all factual allegations contained in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 572 (2007) (citations omitted). The Court must also view the allegations in the light most favorable to the nonmoving party. *See Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

/ / /

1           1.       **Count I: Fraudulent Inducement.**

2           Wyoming law requires a plaintiff alleging fraudulent inducement to show by clear and

3    convincing evidence that the defendant made a false representation intending to induce action by the

4    plaintiff, that the plaintiff reasonably believed the representation to be true, and that the plaintiff

5    suffered damages in relying on the false representation. *Positive Progressions, LLC v. Landerman*,

6    360 P.3d 1006, 1015 (Wyo. 2015). A false representation may arise through words, conduct, or

7    concealment, and the inquiry on a motion to dismiss is whether the complaint plausibly alleges facts

8    satisfying these elements. *Id.* Wyoming also follows Rule 9(b), but the plausibility standard of Rule

9    12(b)(6) remains satisfied when the complaint alleges the circumstances of the fraud with sufficient

10   factual detail to show who made the misrepresentation, when, and with what intent.

11          Here, Plaintiff's 19-page, 146-paragraph Complaint plausibly alleges that Defendant Luke

12   falsely represented that he would complete a buyout of Plaintiff's ownership interest and compensate

13   him in full if Plaintiff transferred backend access, administrative credentials, and operational control

14   of Capital Club. *See* Complaint ¶¶50–62. Plaintiff alleges that Defendant Luke made these

15   statements knowing he had no intention of honoring the buyout and used the representations to

16   induce Plaintiff to transfer control. *Id.* ¶¶63–67. Plaintiff justifiably relied on these promises by

17   performing a full handover of assets, systems, personnel, and proprietary information. *Id.* ¶¶50–55,

18   83. Plaintiff further alleges that Defendant Luke's fraudulent scheme caused him millions in losses

19   and resulted in his complete exclusion from the venture. *Id.* ¶127. These allegations satisfy every

20   element of fraudulent inducement with plausibility.

21          Defendants argue that Plaintiff fails to allege fraud "with particularity." *See* Doc. 19 at

22   14(V)(A). To the contrary, the Complaint details the *who* (Lucas Theis, acting individually and

23   through Capital Club LLC), the *what* (false promise of a written buyout agreement), the *when*

24   (August 2024 – June 2025), the *where* (communications during the handover of Capital Club's

25   backend systems), and the *how* (Defendants used the sham buyout to obtain administrative

26   credentials, databases, and control). *See* Complaint ¶¶ 50–67, 81–87.

27          Those allegations satisfy the particularity requirement. *See Elworthy v. First Tennessee Bank*,

28   391 P.3d 1113, 1125 (Wyo. 2017) ("time, place, and contents of the false representations, as well as

1    the identity of the person making them and what he obtained thereby"). Rule 9(b) allows intent and

2    knowledge to be alleged generally, *Wyo. R. Civ. P.* 9(b); Plaintiff expressly pleads that Defendants

3    knew the promises were false when made and intended reliance. *See* Complaint ¶¶65, 82–84.

4              **2.      Count II: Conversion.**

5              Wyoming law recognizes conversion when a plaintiff alleges ownership or the right to

6    immediate possession of property, that the defendant exercised dominion or control over the property

7    in a manner inconsistent with the plaintiff's rights, and that the plaintiff suffered damages as a result.

8    *Campbell v. Davidson*, 537 P.3d 734, 744 (Wyo. 2023). Conversion may be proven even if the title

9    was transferred to the defendant, so long as the plaintiff held legal title prior to the wrongful taking.

10   *Johnson v. Reiger*, 93 P.3d 992, 1000 (Wyo. 2004). The taking of membership interests can support

11   a claim for conversion. *Liberman v. Mossbrook*, 208 P.3d 1296, 1039 (Wyo. 2009).

12             The complaint alleges that Plaintiff possessed a fifty percent ownership interest in Capital

13   Club's assets, revenues, and financial accounts. *See* Complaint ¶¶96, 107. It further alleges that

14   Defendants exercised unauthorized dominion over those assets and Plaintiff's LLC membership

15   interests by diverting Capital Club revenue to personal accounts, transferring more than $665,000

16   from Bluebanc without explanation, routing funds through undisclosed financial channels, and

17   withholding all cash distributions owed to Plaintiff and CCIL. *Id.* ¶¶72, 95. Plaintiff also alleges that

18   Defendants removed him from administrative access to these accounts, preventing him from

19   exercising his ownership rights. *Id.* ¶¶68–69, 92. These allegations plausibly state that Defendants

20   wrongfully converted property belonging to Plaintiff and caused compensable harm.

21             **3.      Count III: Breach of Fiduciary Duty of Care.**

22             A breach of fiduciary duty requires alleging the existence of a fiduciary relationship, a breach

23   of the duty owed, causation, and resulting damages. *Fried v. Guiberson*, 30 Wyo. 150, 166 (Wyo.

24   1923). Wyoming recognizes that joint venturers and partners are fiduciaries who owe each other

25   duties of loyalty, good faith, and due care. *Id.* A fiduciary breaches the duty of care by failing to act

26   with the diligence, prudence, and attention that a reasonable person would exercise in similar

27   circumstances. *Murphy v. Stevens*, 645 P.2d 82, 88 (Wyo. 1982).

28             Plaintiff alleges that he and Defendant Luke jointly founded and operated Capital Club,

22

thereby creating a joint venture relationship under Wyoming law. *See* Complaint, ¶¶25–29. Plaintiff alleges that Defendant Luke breached the duty of care by withholding accurate financial records, failing to maintain proper accounting controls, allowing transfers of hundreds of thousands of dollars to go unrecorded or disguised, manipulating financial statements, and concealing the true financial condition of the company. *Id.* ¶¶72–79, 94–110. Plaintiff further alleges that the breach caused the loss of his share of Capital Club's revenues and assets. *Id.* ¶¶111–113. These facts satisfy the elements of breach of fiduciary duty of care.

To the extent additional allegations are required, Plaintiff should be entitled to leave to amend to add these additional facts. *See* Declaration ¶14.

### 4.    Count IV: Breach of Fiduciary Duty of Loyalty.

A breach of the fiduciary duty of loyalty occurs when a fiduciary acts in self-interest, engages in self-dealing, usurps business opportunities, or intentionally harms the joint venture. The Wyoming Supreme Court has long recognized that joint venturers owe one another the utmost duty of loyalty and may not appropriate venture property or opportunities for themselves. *Madrid v. Norton*, 596 P.2d 1108, 1118 (Wyo. 1979); *Wyoming-Indiana Oil & Gas Co. v. Weston*, 43 Wyo. 526, 540–41 (Wyo. 1932). If a joint venturer acquires venture property or profits on his own account while the venture is ongoing, he must account. *Madrid*, 596 P.2d at 1118.

The complaint alleges that Defendant Luke breached the duty of loyalty by using Capital Club's resources, cash, systems, personnel, and customer base to build and operate Gem Hunters, a directly competitive business that generated between $5 million and $10 million in revenue. *See* Complaint, ¶¶39–49, 120. Plaintiff alleges that Defendant Luke transferred Capital Club's employees and online course content to third-party entity CC X LLC, diverted business opportunities, and appropriated proprietary assets developed by Plaintiff. *Id.* ¶¶45–46. Plaintiff also alleges that Defendant Luke concealed these competing activities while inducing Plaintiff to relinquish control. *Id.* ¶¶121-127. These facts sufficiently allege a breach of fiduciary duty of loyalty claim through disloyal conduct and usurpation of partnership opportunities.

To the extent additional allegations are required, Plaintiff should be entitled to leave to amend to add these additional facts. *See* Declaration ¶14.

1      **5.      Count V: Unjust Enrichment.**

2           Wyoming recognizes unjust enrichment where 1) valuable services were rendered; 2) to the

3      party to be charged; 3) which services were accepted, used, and enjoyed by the charged party; and

4      4) under circumstances that reasonably notified the party being charged that the other party would

5      expect payment for the services. *Schlinger v. McGhee*, 2012 WY 77, ¶ 22, 268 P.3d 264, 272 (Wyo.

6      2012). The doctrine prevents one party from retaining financial gains that, in fairness and justice,

7      belong to another.

8           Plaintiff alleges that he conferred substantial benefits on Defendants by providing substantial

9      mentorship and business support (Complaint ¶¶18, 19), "operations, overseeing execution, hiring,

10     systems development, marketing, and day-to-day management." *See* Complaint ¶28. Plaintiff

11     provided more than $4.15 million in funding (¶30), built Luke's personal brand to unprecedented

12     levels using Plaintiff's personal resources and relationships (¶¶33-37), and "contributed deep

13     operational expertise, strategic planning systems, ambassador recruitment formulas, proprietary

14     mass content distribution processes" (¶38), among other contributions.

15          Plaintiff further alleges that Defendants accepted and retained those benefits by using

16     Plaintiff's systems, teams, and investments to grow Defendant Luke's personal and commercial

17     platforms and to create an identical business, "all built on the same audience, systems, and staff that

18     Plaintiff had already developed and funded, Gem Hunters, for Defendants' exclusive benefit. *Id.*

19     ¶¶39–42. Luke used the assets that Plaintiff funded, namely, employees, contractors, intellectual

20     property, marketing assets, and personnel". *Id.* ¶¶43-46. Plaintiff alleges that Defendants retained

21     these benefits while excluding him from all profits, distributions, and access, allowing Luke to derive

22     "over $15 million is profits from this competing venture". *Id.* ¶¶46–49. Defendant Luke then

23     systematically gained exclusive control over all of the assets of Capital Club from Plaintiff, without

24     any due consideration. *Id.* ¶¶50-58. These facts plausibly state a claim for unjust enrichment.

25          **6.      Count VI: Civil Conspiracy.**

26          Under Wyoming law, a civil conspiracy consists of two or more persons, an object to be

27     accomplished, a meeting of the minds on the object or course of action, one or more unlawful overt

28     acts, and damages as the proximate result. *White v. Shane Edeburn Constr., LLC*, 2012 WY 118, ¶

30, 285 P.3d 949, 958 (Wyo. 2012) (quoting *McKibben v. Chubb*, 840 F.2d 1525, 1533 (10th Cir. 1988)). Civil conspiracy is not an independent cause of action and must be predicated on an underlying tort. *Action Snowmobile & RV, Inc. v. Most Wanted Performance, LLC*, 2018 WY 89, ¶ 16, 423 P.3d 317, 324 (Wyo. 2018).

Plaintiff plausibly alleges that Defendants Luke and Lara acted together to accomplish an unlawful purpose and committed overt acts that caused Plaintiff harm. The complaint alleges that Defendants reached a meeting of the minds to remove Plaintiff from Capital Club, divert its assets, and appropriate its business opportunities for their personal use. *See* Complaint ¶¶49–50, 68–77. Plaintiff alleges multiple overt acts in furtherance of this agreement, including Defendant Lara removing Plaintiff's administrative access, concealing financial information, routing transfers through undisclosed accounts to undisclosed recipients, assisting in the diversion of funds and personnel to Defendants' competing venture, and using financial platforms that are difficult to trace. *Id.* ¶¶54, 72–77. Plaintiff further alleges resulting damages in the loss of his ownership interest, partnership assets, and millions in diverted revenue and overstated capital to Plaintiff's detriment. *Id.* ¶¶72-75. Because these allegations identify concerted action, an agreement, overt acts, and resulting injury tied to underlying torts, including fraudulent inducement and breach of fiduciary duty, they satisfy the elements of civil conspiracy under Wyoming law.

## CONCLUSION

For the reasons above, Defendants' Motion to Dismiss should be denied in its entirety. Plaintiff has adequately pled jurisdictional facts, and venue is proper. Based on the facts presented, to the extent the Court does not believe that jurisdictional facts are sufficient, Plaintiff requests jurisdictional discovery. Finally, Plaintiff has sufficiently pled all of its claims for relief, including fraud, which is alleged with particularity. If the Court finds any deficiency with Plaintiff's allegations, Plaintiff respectfully requests that the Court grant him leave to amend under Fed. R. Civ. P., Rule 15(a), which is freely granted where justice so requires.

/ / /

/ / /

RESPECTFULLY SUBMITTED this 3rd day of December, 2025.

**RM WARNER, PLC**
By: */s/ Raeesabbas Mohamed*

Raeesabbas Mohamed, Esq. (*Pro Hac Vice*)
8283 N. Hayden Road, Suite 229
Scottsdale, Arizona 85258
Raees@rmwarnerlaw.com
*Attorney for Plaintiff*


## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of December 2025, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties registered for electronic filing via the CM/ECF system.


*/s/ Raeesabbas Mohamed*
Raeesabbas Mohamed
*Attorney for Plaintiff*