

**FILED**

9:33 am, 1/6/26

**Margaret Botkins**
**Clerk of Court**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

---

TAN BOON KIAT, a.k.a. STEVE TAN,
an individual,

   Plaintiff,

  v.

LUCAS EMANUEL URIA THEIS, a.k.a.
LUKE BELMAR, an individual; LARA
ELYSE URIA THEIS, a.k.a. LARA
COLUMBO, an individual; and
CAPITAL CLUB, LLC, a Wyoming
Limited Liability Company,

   Defendants.

Case No. 25-CV-214-R

---

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS THE CLAIMS AGAINST THEM [18] AND GRANTING DEFENDANTS' MOTION TO STRIKE [23]

---

   This matter comes before the Court on Defendants' Motion to Dismiss the claims against them [ECF No. 18], and Defendants' Motion to Strike Exhibits 5, 13, and 14 from Plaintiff's Response in Opposition. [ECF No. 23]. Plaintiff's jurisdictional and factual claims rest on the allegedly integral position of Capital Club, LLC, a Wyoming entity, in the facts at issue. [ECF No. 1, at 8] ("The Wyoming entity sits at the center of the operative facts: its funds were diverted, its records manipulated, its assets transferred, and its governance rights stripped from Plaintiff through fraudulent means.").

The Court having reviewed the parties' Motion, Response, and Reply, and being fully informed on the matter, finds personal jurisdiction over Defendants, but dismisses Plaintiff's claims of conversion, breach of fiduciary duties, and civil conspiracy, and grants Defendants' Motion to Strike Plaintiff's exhibits.

## BACKGROUND

Plaintiff Tan Boon Kiat ("Steve Tan"), brings this action alleging Defendants fraudulently forced him out of a business without compensating him for his contributions. [ECF No. 1]. He asserts Lucas Uria Theis ("Luke Belmar") was his primary business partner, and Defendant's wife Lara Uria Theis ("Lara Columbo") and Capital Club, LLC were instrumental in the fraud perpetrated against him. Capital Club, LLC is not the business at issue but, under Plaintiff's allegations, was used by Ms. Columbo and Mr. Belmar ("Individual Defendants") to improperly funnel money to a competing business created by Mr. Belmar.

The extent of Capital Club, LLC's involvement in the underlying facts are fundamentally contested and at the heart of this lawsuit. Although Plaintiff concedes Mr. Belmar solely formed Capital Club, LLC in 2021, he alleges the parties co-founded "Capital Club" (the entity central to this dispute) in 2022. [ECF No. 1, at 5]; [ECF No. 19, at 2] (Defendants refer to the business as "Capital Club Business"). Plaintiff contends management of the Wyoming LLC was eventually transferred from Mr. Belmar to Ms. Columbo "on paper" for tax purposes. [ECF No. 1, at 3–4]. Plaintiff neglects to differentiate between Capital Club, LLC and the Capital Club business at issue throughout his pleadings. Defendants argue Plaintiff intentionally or carelessly

conflates the unrelated entities without a factual basis, solely for the purpose of maintaining the false appearance of jurisdiction in this matter. [ECF No. 19, at 16].

As to the intersection between the business and the Wyoming LLC, Plaintiff recounts, "[i]nitially, the parties used a Wyoming limited liability company, Capital Club LLC . . . to facilitate operations. However, the following year they agreed that Mr. Tan's Hong Kong entity, CC International Limited ('CCIL'), would be the designated parent company and central financial repository." [ECF No. 1, at 5]. Defendants assert Plaintiff and his brother controlled CCIL, and another Hong Kong entity called "Capital Club Holding Limited." [ECF No. 19, at 3–4]. They further assert "Capital Club LLC operated as a financial conduit for business activities for Defendants Luke and Lara." *Id*. at 4.

The business undertaken by Plaintiff and Mr. Belmar was "focused on digital entrepreneurship, education, and community-building" and was structured so "[m]embers pay subscription fees in exchange for access to online courses, mentorship programs, networking opportunities, and exclusive digital content." [ECF No. 1, at 5]. Defendants claim the business was intended to utilize Hong Kong entities formed by Plaintiff to create an international, even split partnership in Hong Kong. [ECF No. 19, at 2]. They contend the business began in the United States and had its operations in Hong Kong, although the parties never formally or legally materialized the terms or structure of the business. *Id*.

Plaintiff claims the business flourished in part due to his personal and financial investments. [ECF No. 1, at 6]. He alleges Mr. Belmar secretly launched a competing

entity called "Gem Hunters" while still engaged in the enterprise with Plaintiff. *Id*. at 2. He asserts Mr. Belmar fraudulently diverted business resources and employees to the new venture. *Id*. at 7. Plaintiff states he intended to be bought out of the business in late 2024, and Mr. Belmar agreed to buy him out once his interest was transferred. However, once the transfer had been completed over several months, Plaintiff was allegedly locked out of the company systems and never paid for his contributions. *Id*. at 9. Plaintiff appears to assert Mr. Belmar was his primary contact, but that he conspired with Ms. Columbo to lock him out of the company, and the two used the Wyoming LLC to improperly divert company funds while the money should have been routed through CCIL. *See id*.

Plaintiff brought this action asserting claims against Capital Club, LLC, Mr. Belmar, and Ms. Columbo respectively for: (1) fraudulent inducement; (2) conversion; (3) breach of fiduciary duty of care; (4) breach of fiduciary duty of loyalty; (5) unjust enrichment; and (6) civil conspiracy. *Id*. at 11–19. Defendants now motion the Court to dismiss the Complaint because: (1) the Court lacks personal jurisdiction over Individual Defendants; (2) venue is improper; (3) Plaintiff failed to plead fraud with particularity; and (4) Plaintiff has failed to state a claim upon which relief may be granted. [ECF No. 19, at 2].

## RELEVANT LAW

### I.  *Motion to Dismiss*

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may challenge a complaint for the "failure to state a claim upon which relief can be granted."

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff's claim is facially plausible when the court can reasonably infer the defendant's liability from the facts pled. *Id.* Plausibility does not equal probability. *Id.* A plaintiff must show more than a sheer possibility, conceivability, or speculation the defendant acted unlawfully. *Id.*; *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008). Labels, legal conclusions, and formulaic recitations of the elements are insufficient to survive a motion to dismiss. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted). In reviewing a Rule 12(b)(6) motion, a court should "accept as true all well-pleaded factual allegations in a complaint in a light most favorable to the plaintiff." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).

### RULING OF THE COURT

Capital Club, LLC is at the center of Plaintiff's allegations. [ECF No. 1, at 8]. The Court finds the entity was formed in Wyoming, and accordingly, is subject to general personal jurisdiction in this Court. *Avus Designs*, *Inc.* v. *Grezxx*, *LLC*, 644 F. Supp. 3d 963, 982 (D. Wyo. 2022). Plaintiff additionally establishes personal jurisdiction over Individual Defendants based on an alter-ego theory. Because all Defendants are subject to personal

jurisdiction, venue in this Court is proper. 28 U.S.C.A. § 1391(b)(3). Finally, the Court finds Plaintiff fails to adequately state a claim upon which relief may be granted as to conversion, breach of fiduciary duties, and civil conspiracy. The Court will address (I) personal jurisdiction; (II) venue; and (III) the sufficiency of Plaintiff's substantive pleadings in turn.

## I.  *Personal Jurisdiction*

Personal jurisdiction refers to "[a] court's power to bring a person into its adjudicative process; jurisdiction over a defendant's personal rights." *Personal Jurisdiction*, Black's Law Dictionary (12th ed. 2024). "The Plaintiff bears the burden of establishing personal jurisdiction over the defendant." *OMI Holdings*, *Inc*., *v. Royal Ins*. *Co*. *of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998) (quoting *Rambo v. Am. S. Ins. Co*., 839 F.2d 1415, 1417 (10th Cir. 1988)) (quotations omitted).

"A court may obtain personal jurisdiction over a defendant in three ways: 'consent by the parties, presence in the forum state, [or] actions by the defendant which affect people in the forum state.'" *Christian v. Onem Commc'ns Ltd*., No. 22-CV-00024-NDF, 2023 U.S. Dist. LEXIS 202416, at *3 (D. Wyo. Sep. 20, 2023) (citing *Qwest Commc'ns Int'l*, *Inc. v. Thomas*, 52 F. Supp. 2d 1200, 1204 (D. Colo. 1999)). The Court will begin by addressing general personal jurisdiction.

### A.  General Personal Jurisdiction

"Where a court's exercise of jurisdiction does not directly arise from a defendant's forum-related activities, the court may nonetheless maintain *general* personal jurisdiction over the defendant based on the defendant's general business contacts with the forum

state." *OMI Holdings*, *Inc.*, 149 F.3d at 1091 (emphasis in original). "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler A.G. v. Bauman*, 571 U.S. 117, 127 (2014) (citations and quotations omitted).

### 1. *Capital Club LLC*

Plaintiff contends "[t]his Court has personal jurisdiction over Defendant Capital Club LLC because it is a Wyoming limited liability company organized and existing under Wyoming law." [ECF No. 1, at 3]. Defendants concede Capital Club, LLC is subject to general personal jurisdiction because it was formed in Wyoming, although they assert it does not have systematic contacts with the state. [ECF No. 19, at 10, n.6].

"[A]n LLC is 'at home' in its state of organization for the purposes of general personal jurisdiction, as is consistent with the Due Process Clause." *Avus Designs*, *Inc*., 644 F. Supp. 3d at 982 (footnote omitted) (citing *Daimler A.G.*, 571 U.S. at 139). Because Capital Club, LLC is a limited liability company organized under Wyoming law it is subject to this Court's general personal jurisdiction. *See id*.; [ECF No. 1, at 3].

### 2. *Individual Defendants*

Plaintiff approaches general personal jurisdiction over Individual Defendants as an extension of the analysis applicable to Capital Club, LLC. [ECF No. 1, at 3]. In other words, Plaintiff focuses on their involvement with Capital Club, LLC as a basis for extending personal jurisdiction over all defendants. *Id*. at 8. Individual Defendants claim they are both residents of Puerto Rico who have no systematic contacts with Wyoming. [ECF No. 19, at

6, 10]. They argue they "have never been to Wyoming, have no offices in Wyoming, do not have Wyoming real property, do not have any personal property in Wyoming, do not maintain accounts in Wyoming banks, and have no Wyoming phone numbers." *Id*. at 10.

The Court finds general personal jurisdiction applicable to Capital Club, LLC will not automatically be imputed to its members. *Christian v. Loyakk*, *Inc*., 650 F. Supp. 3d 1242, 1264 (D. Wyo. 2023). "[T]he Court's general jurisdiction over [the entity] does not impute jurisdiction over its founders, officers, or other agents individually." *PPEX*, *LLC v. Buttonwood*, *Inc*., No. 21-CV-53-F, 2021 WL 7210650, at *5 (D. Wyo. July 13, 2021) (citations omitted); *see Keeton v. Hustler Mag*., *Inc*., 465 U.S. 770, 781, n.13 (1984) ("jurisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him . . . . Each defendant's contacts with the forum State must be assessed individually."). "Because personal jurisdiction cannot be premised on mere membership in a Wyoming LLC, Defendant must have minimum contacts with Wyoming independent of the company." *Wright McCall LLC v. Degaris Law*, *LLC*, No. CH-2022-5, 2022 WL 21817050, at *7 (Wy. Ch. Nov. 28, 2022).

Plaintiff acknowledges neither of the Individual Defendants reside in Wyoming, and he makes no allegations suggesting either have ever visited Wyoming, conducted business within the state, or have any contact whatsoever aside from the purported dealings with the Wyoming LLC. A general personal jurisdiction analysis centers on "continuous and systematic" contacts between the defendant and forum so as to approximate physical presence within the state. *See Shrader v. Biddinger*, 633 F.3d 1235, 1246–47 (10th Cir. 2011). Because Plaintiff has not demonstrated any systematic contacts between Individual

Defendants and Wyoming, the Court declines to exercise general personal jurisdiction over them. The Court now turns to Plaintiff's alter-ego theory as an alternative basis for imposing personal jurisdiction.

### i. Alter-Ego Theory

The limited liability company structure may be pierced when the company has been misused such that there is no separation between the company and its members, and this lack of separateness would lead to injustice, unfairness, or inequity. *GreenHunter Energy*, *Inc*. *v*. *W*. *Ecosystems Tech*., *Inc*., 2014 WY 144, ¶ 27, 337 P.3d 454, 462 (Wyo. 2014); *see Ten Mile Indus*. *Park v*. *Plains Serv*. *Corp*., 810 F.2d 1518, 1527 (10th Cir. 1987) ("[T]he corporate structure will ordinarily insulate the individuals from the court's jurisdiction."). "Failure of a limited liability company to adhere to the formalities required of a corporation is not a basis for disregarding the company in an action seeking to pierce its veil." *GreenHunter Energy*, *Inc*., ¶ 25, 337 P.3d at 462 ("By passing the 2010 Act, the legislature determined that even greater flexibility and informality are acceptable features of a limited liability company.") (citing WYO. STAT. ANN. §§ 17–29–104, 110, 401, 402 & 407).

The Court finds Plaintiff presents a sufficient basis to extend personal jurisdiction over Individual Defendants based on an alter-ego theory. Plaintiff claims Individual Defendants used Capital Club, LLC as their alter ego to perpetrate fraud, misappropriate assets, and injure Plaintiff. He alleges "[t]he company had no independent offices or decision-makers; business decisions were made personally by Defendants Luke and Lara, and business funds were commingled or transferred between personal accounts and the

LLC. . . . [and Defendants used] the LLC for their personal expenses and Capital Club business conduct." [ECF No. 22, at 3]; [ECF No. 1, at 11, 13].

Plaintiff mentions "[d]ocuments from the Bluebanc account reveal Defendants transferred over $665,000 out to unidentified recipients. . . . Defendants' entry for "Due from Owners" totaling $479,000 also strongly suggests misappropriation." [ECF No. 1, at 13]. Plaintiff also relates "[b]y August 2024, the 'Owner's Capital' account on Capital Club's balance sheet had ballooned to $990,000, even though no new investments had been made. Simultaneously, Capital Club's state liabilities dropped from $1.16 million to just $434 in just three months, suggesting intentional manipulation of internal records." *Id*. at 11.

Overall, Plaintiff claims when examining Defendants' account management, "[a] forensic review revealed glaring anomalies, including untraceable transfers, internal inconsistencies, and circular fund movements. The audit identified a pattern of conduct indicating deliberate misappropriation, obfuscation, and asset shielding by both Defendants." *Id*. at 11. He argues because Defendants disregarded corporate formalities the entity should be disregarded to make Defendants subject to personal jurisdiction based on this theory. *Id*. at 12. Defendants assert Plaintiff's attachment of Capital Club LLC's formation and transfer of ownership documents to his Response in Opposition demonstrate their observation of business entity formalities—undermining Plaintiff's intended point. [ECF No. 25, at 6–7].

Plaintiff adequately alleges a lack of separation between Defendants suggesting injustice, unfairness, or inequity to him if unaddressed. *See GreenHunter Energy, Inc*., ¶

46, 337 P.3d at 467. While the analysis required for piercing an LLC's veil is necessarily fact specific, commingling company funds and diverting company resources support an alter-ego theory for personal jurisdiction. *Id.* at ¶ 28 ("This test is fact-driven and flexible, and it focuses on whether the limited liability company has been operated as a separate entity as contemplated by statute, or whether the member has instead misused the entity in an inequitable manner to injure the plaintiff.").

The Court acknowledges Plaintiff has sufficiently pled enough facts, taken as true to plausibly allege an alter-ego theory supporting personal jurisdiction over Individual Defendants. Having established personal jurisdiction over all Defendants, the Court declines to address specific personal jurisdiction and next addresses venue.

## II. Venue

Generally, venue is a proper in a civil action within:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C.A. § 1391(b)(1–3) (reformatted).

Plaintiff states "[v]enue in this Court is proper under 28 U.S.C. § 1391(b)(2) because Defendant Capital Club LLC is incorporated in Wyoming and a substantial part of the events or omissions giving rise to the claim occurred or are located in Wyoming." [ECF

No. 1, at 3]. Defendants challenge venue as improper and assert there is no meaningful connection between Defendants' alleged actions and the venue. [ECF No. 19, at 14].

The Court determines more convenient forums exist for litigation against Defendants, however, because Defendants are subject to personal jurisdiction in Wyoming, venue is appropriate. 28 U.S.C.A. § 1391(b)(3). *But see Unitednet Ltd. v. Tata Commc'ns Am.*, *Inc.*, 112 F.4th 1259, 1265 (10th Cir. 2024) (holding the presumption in favor of a domestic plaintiff's choice of forum is much less reasonable when the plaintiff is foreign). The Court now turns to the sufficiency of Plaintiff's substantive pleadings.

### III.   *Failure to State a Claim*

Plaintiff alleges his "causes of action (fraudulent inducement, conversion, breach of fiduciary duty of care and loyalty, unjust enrichment, and civil conspiracy) stem from the misuse of the assets of the Wyoming LLC that Defendant Luke formed and controlled." [ECF No. 22, at 11]. Defendants challenge Plaintiff's fraudulent inducement claim under the particularity standard within Rule 9 of the Wyoming Rules of Civil Procedure and the remainder of his claims under Federal Rule of Civil Procedure 12(b)(6). [ECF No. 19, at 14, 17]. The Court will address Plaintiff's claims of (A) fraudulent inducement; (B) conversion; (C) breach of fiduciary duty; (D) unjust enrichment; and (E) civil conspiracy individually.

#### A. Fraudulent Inducement

To prove fraudulent inducement, a plaintiff must show by clear and convincing evidence "1) the defendant made a false representation intending to induce action by the plaintiff; 2) the plaintiff reasonably believed the representation to be true; and 3) the

plaintiff suffered damages in relying on the false representation." *Positive Progressions*, *LLC v. Landerman*, 2015 WY 138, ¶ 23, 360 P.3d 1006, 1015 (Wyo. 2015). A claim of fraudulent inducement must be pled with particularity—conclusory allegations lacking specific misrepresentations, reliance, or damages are insufficient. W.R.C.P. 9(b); *Rogers v. Wright*, 2016 WY 10, ¶ 13, 366 P.3d 1264, 1271 (Wyo. 2016) ("When considering whether clear and convincing evidence has been presented, this Court has recognized: 'Conduct or words which tend to produce an erroneous impression may satisfy the plaintiff's burden.'") (quoting *Claman v. Popp*, 2012 WY 92, ¶ 43, 279 P.3d 1003, 1016 (Wyo. 2012)).

Defendants contend Plaintiff's pleading does not make it clear which defendants Plaintiff is alleging fraudulent inducement against. [ECF No. 19, at 15]. Defendants persist, "[t]he Complaint does not articulate with any clarity what Plaintiff was purportedly entitled to receive, or how such entitlement arose." *Id*. In pointing out the alleged pleading deficiencies, Defendants again reference Plaintiff's apparent conflation of "Capital Club" with other, similarly named entities as evidence of repetitively vague allegations. *Id*. at 16.

Plaintiff alleges:

[T]he Complaint details the *who* (Lucas Theis, acting individually and through Capital Club LLC), the *what* (false promise of a written buyout agreement), the *when* (August 2024[–]June 2025), the *where* (communications during the handover of Capital Club's backend systems), and the *how* (Defendants used the sham buyout to obtain administrative credentials, databases, and control).

[ECF No. 22, at 21] (emphasis in original) (citing ECF No. 1, at ¶¶ 50–67, 81–87).

Here, Plaintiff has alleged Mr. Belmar made representations he would purchase Plaintiff's interest in the business, without intending to purchase it. [ECF No. 1, at 7–9]. Plaintiff asserts he reasonably relied on these representations, based on the sample term sheet provided to him and the parties' previous dealings, and he suffered damages in the form of loss of access and management of the business and not being compensated for his interest. *Id*. The Court finds Plaintiff has adequately alleged the elements of fraudulent inducement at this stage of the proceedings.

## B. Conversion

"Conversion is defined as any distinct act of dominion wrongfully executed over one's property in denial of his right or inconsistent therewith." *Campbell v. Davidson*, 2023 WY 100, ¶ 33, 537 P.3d 734, 744 (Wyo. 2023) (quoting *Satterfield v. Sunny Day Res., Inc.*, 581 P.2d 1386, 1388 (Wyo. 1978)). To plead a prima facie case of conversion, a plaintiff must show:

> (1) [H]e had legal title to the converted property; (2) he either had possession of the property or the right to possess it at the time of the conversion; (3) the defendant exercised dominion over the property in a manner which denied the plaintiff his rights to use and enjoy the property; (4) in those cases where the defendant lawfully, or at least without fault, obtained possession of the property, the plaintiff made some demand for the property's return which the defendant refused; and (5) the plaintiff has suffered damage by the loss of the property.

*Ferguson v. Coronado Oil Co.*, 884 P.2d 971, 975 (Wyo. 1994) (quoting *Frost v. Eggeman*, 638 P.2d 141, 144 (Wyo.1981)).

Defendants state Plaintiff's claim for conversion is the only cause of action against Capital Club, LLC, and it must be dismissed. [ECF No. 19, at 18]. They argue, "[t]he only

allegation against Capital Club LLC is that it 'converted revenue' allegedly owed to a non-party entity, CCIL." *Id*. Defendants conclude, because CCIL is not a party to this action, Plaintiff lacks standing to assert claims on CCIL's behalf. *Id*. Plaintiff claims the Complaint plausibly alleges he was a half owner in the business, and Defendants exercised unauthorized dominion over the business assets and Plaintiff's membership interest by preventing him from exercising his ownership rights and diverting business funds. [ECF No. 22, at 26] (citing ECF No. 1, at ¶¶ 68–69, 72, 92, 95–96, 107).

"Ordinarily, a party 'must assert his own legal rights' and 'cannot rest his claim to relief on the legal rights . . . of third parties.'" *Collins v. Daniels*, 916 F.3d 1302, 1312–13 (10th Cir. 2019) (quoting *Sessions v. Morales-Santana*, 582 U.S. 47, 57 (2017), and *Warth v. Seldin*, 422 U.S. 490, 499 (1975)). "But we recognize an exception where . . . 'the party asserting the right has a close relationship with the person who possesses the right and there is a hindrance to the possessor's ability to protect his own interests.'" *Id*. (quoting *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004)).

Plaintiff asserts Mr. Belmar was tasked with the exclusive management of the business. [ECF No. 1, at 14–15]. Neither party details the financial or operational structures of the business. If Mr. Belmar alone was tasked with management of the business and CCIL was the intended financial conduit, it is unclear at what point Plaintiff would have had legal title to the business funds. Absent any additional evidence, CCIL had legal title to the funds at the time they were allegedly converted by Defendants.

Plaintiff has made no showing CCIL is in anyway hindered from asserting this claim on its own behalf. Plaintiff tangentially alleges he owns CCIL, but does not clarify what

his role, or position, within the entity is, nor the specific kind of entity it is. [ECF No. 1, at 5, 13]. Under the facts as pled by Plaintiff, CCIL would have had a right to possess the funds at the time they were diverted to Capital Club, LLC—not Plaintiff personally. Therefore, CCIL alone may assert a claim for conversion on these facts, absent a showing of Plaintiff's close relationship to the entity at issue, or a hindrance on the part of CCIL to bring the claim. *See Collins*, 916 F.3d at 1312–13.

### C. Breach of Fiduciary Duty

Defendants argue Plaintiff fails to identify a legal source supporting the existence of a fiduciary relationship between the parties. [ECF No. 19, at 20]. Defendants again assert Plaintiff has never been a member of the Wyoming LLC and there was no agreement or other formal business agreement between the parties that would impose fiduciary duties on Defendants. *Id*. at 20–21. Plaintiff alleges he and Mr. Belmar jointly founded and operated their business—which he declares creates a joint venture relationship under Wyoming law within his Response. [ECF No. 22, at 22–23]. He does not use this label to describe the business within his Complaint. *See* [ECF No. 1, at 5]. Plaintiff claims Mr. Belmar breached the fiduciary duty of care by failing to provide accurate financial accountings and failing to allow for oversight. *Id*. at 14. He similarly alleges Mr. Belmar breached the fiduciary duty of loyalty by secretly diverting business' resources to a competing business. *Id*. at 15.

To establish a joint venture under Wyoming law, the party asserting the relationship exists must prove:

(1) [A]n agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose, among the members; and (4) an equal right

to a voice in the direction of the enterprise, which gives an equal right of control.

*Dimick v. Hopkinson*, 2018 WY 82, ¶ 29, 422 P.3d 512, 522 (Wyo. 2018).

Here, there are a number of issues with Plaintiff's assertion that a joint venture exists. First, Plaintiff makes no mention of a joint venture relationship within the Complaint and raises this argument for the first time in his Response. [ECF No. 22, at 22–23]; [ECF No. 1, at 14] (stating simply, "[a] fiduciary relationship existed between Plaintiff and Defendant Luke by virtue of their partnership in Capital Club and joint ownership of the business."). Even if the Court were to ignore this crucial fact, Plaintiff presents no evidence the parties intended the business to be governed by Wyoming law. All parties appear to concede the terms of the business were never reduced to writing, and all parties have virtually no presence in Wyoming aside from ties to Capital Club, LLC. [ECF No. 1, at 5] (stating Plaintiff and Mr. Belmar "formally agreed to co-found Capital Club" but including no reference to a written agreement, execution, or presence in Wyoming beyond the Wyoming LLC).

Additionally, Plaintiff states he "entrusted Defendant Luke with the exclusive management of Capital." [ECF No. 1, at 14–15]. This assertion, casts doubt on the idea both parties had an equal right to control the business, as required for a joint venture under Wyoming law. *See Dimick*, ¶ 29, 422 P.3d at 522. Plaintiff provides no additional facts explaining the circumstances surrounding the business formation, nor the intended structure of the same. Overall, Plaintiff provides nothing beyond the mention of Wyoming law broadly, to support the imposition of fiduciary duties over Mr. Belmar. Because

Plaintiff has not identified a source of fiduciary duties, the Court finds he has not met his standard of plausibility, and the claim is dismissed. *Ridge at Red Hawk*, *LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) ("[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for these claims.") (emphasis in original).

### D. Unjust Enrichment

Defendants claim Plaintiff fails to establish they reasonably should have known he expected to be paid for his contributions. [ECF No. 19, at 21]. Plaintiff claims he provided professional, personal, and financial contributions to the business. [ECF No. 1, at 16–17]. He asserts Defendants retained these benefits by using the systems, teams, and investments for Defendants' exclusive benefit. *Id*.

> To prove a claim of unjust enrichment, a plaintiff must demonstrate:
>
> (1) Valuable services were rendered, or materials furnished,
> (2) to the party to be charged,
> (3) which services or materials were accepted, used and enjoyed by the party, and,
> (4) under such circumstances which reasonably notified the party to be charged that the plaintiff, in rendering such services or furnishing such materials, expected to be paid by the party to be charged. Without such payment, the party would be unjustly enriched.

*Statzer v. Statzer*, 2022 WY 117, ¶ 13, 517 P.3d 574, 579 (Wyo. 2022) (citing *Electrical Wholesale Supply Co.*, *Inc. v. Fraser*, 2015 WY 105, ¶ 27, 356 P.3d 254, 261 (Wyo. 2015)). Under the fourth element, the plaintiff must show the plaintiff reasonably expected

payment, the circumstances did not require an express demand for payment, and the plaintiff's lack of payment would result in the defendant's unjust enrichment. *Id.* at ¶ 14.

Here, Plaintiff has alleged he expected to be paid for his interest in the business after Individual Defendants were given full access to the necessary systems. [ECF No. 1, at 8–9]. Under these circumstances, it appears reasonable Plaintiff would not be expected to demand payment at the close of this process. Finally, Plaintiff has asserted Individual Defendants' failure to compensate him has resulted in unjust enrichment because they are able to use the business systems to their sole benefit, and to retain the money he expected to be paid. *Id.* at 13–14. The Court finds Plaintiff has adequately alleged facts supporting unjust enrichment to survive Defendants' Motion to Dismiss.

### E. Civil Conspiracy

Generally, to be entitled to relief on a claim of civil conspiracy, a plaintiff must allege the existence of "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds in the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate cause thereof." *Action Snowmobile & RV, Inc. v. Most Wanted Performance, LLC*, 2018 WY 89, ¶ 16, 423 P.3d 317, 324 (Wyo. 2018). "To state a claim for civil conspiracy, a plaintiff must state an underlying cause of action in tort." *Pinther v. Am. Nat'l Prop. & Cas. Ins. Co.*, 2024 WY 18, ¶ 36, 542 P.3d 1059, 1071 (Wyo. 2024), *reh'g denied*, (Mar. 5, 2024) (citation omitted).

Plaintiff claims "Defendants Luke and Lara jointly engaged in a coordinated and deliberate scheme to deprive Plaintiff of his financial and operational interest in Capital Club." [ECF No. 1, at 17]. He states, "Defendants coordinated the concealment of assets,

including the routing of revenue through crypto wallets, unauthorized and undisclosed third-party accounts, and LLCs that had no formal role in the company's original structure." *Id.* at 18. Defendants counter, "[n]ot only does Plaintiff fail to allege facts sufficient to establish the necessary elements of civil conspiracy, but he also fails to plead any well-founded underlying tort upon which such a conspiracy could be based." [ECF No. 19, at 22].

Plaintiff does not explicitly allege a tort underlying his claim of conspiracy, but it appears he intends the conspiracy to be taken in hand with his claims of fraudulent inducement and conversion. *See* [ECF No. 1, at 17–18]. Because conspiracy is tied to an underlying tort, the tort claim must survive for the conspiracy claim to remain. *See Pinther*, ¶ 36, 542 P.3d at 1071; *Campbell v. Davidson*, 2023 WY 100, ¶ 55, 537 P.3d 734, 748 (Wyo. 2023) ("Because the [Plaintiff] cannot establish the Defendants committed fraud or conversion, they also cannot establish Defendants conspired to commit such torts.") (alteration added). Plaintiff's claim of conversion has been dismissed which precludes conspiracy from being based on this tort. The Court therefore reviews Plaintiff's conspiracy claim considering the tort of fraudulent inducement.

As stated, fraudulent inducement requires clear and convincing evidence "1) the defendant made a false representation intending to induce action by the plaintiff; 2) the plaintiff reasonably believed the representation to be true; and 3) the plaintiff suffered damages in relying on the false representation." *Positive Progressions*, *LLC*, ¶ 23, 360 P.3d at 1015. Fraudulent inducement as pled refers only to Mr. Belmar—not Ms. Columbo. [ECF No. 22, at 21] (citing ECF No. 1, at ¶¶ 50–67, 81–87). But for a claim of civil

conspiracy two or more co-conspirators are required. *Action Snowmobile & RV, Inc.*, ¶ 16, 423 P.3d at 324. The Court finds Plaintiff's claim of a civil conspiracy fails because it lacks an underlying cause of action in tort. *See Pinther*, ¶ 36, 542 P.3d at 1071; *Campbell*, ¶ 55, 537 P.3d at 748.

### IV. Motion to Strike

Defendants move to strike Plaintiff's Exhibits 5, 13, and 14, attached to Plaintiff's Response in Opposition to the Motion to Dismiss. [ECF No. 23, at 2]; *see* [ECF Nos. 22-6, 22-14 & 22-15]. They state the three exhibits violate Fed. R. Civ. P. 12(f) because they are immaterial, impertinent, and scandalous. [ECF No. 23, at 2]. Defendants contend the Local Rules permit parties to attach appropriate exhibits but limit such attachments to "only those exhibits or portions thereof specifically cited in the briefing and upon which the party relies." U.S.D.C.L.R. 7.1(c)(2); [ECF No. 27, at 3].

Defendants explain Exhibit 5 includes confidential attorney-client privileged communications and argues even if the communications are not protected the exhibit is immaterial and impertinent to the relevant issues. They further assert Exhibits 13 and 14 relate only to the internal financial matters of Capital Club, LLC and are likewise irrelevant, immaterial, impertinent, and scandalous. [ECF No. 26, at 2]. Plaintiff counters the exhibits support his "prima facie jurisdictional showing without introducing scandalous or extraneous material." *Id*. at 3.

The Court strikes Plaintiff's Exhibits 5, 13, and 14, finding there is adequate evidence to find personal jurisdiction exists over Defendants absent the exhibits. Exhibit 5 includes Defendants' efforts to engage a Wyoming attorney for Capital Club, LLC. *Id*. at

21

4; [ECF No. 22-6]. The benefit of this evidence is unclear to the Court. U.S.D.C.L.R. 7.1(c)(2) ("Any exhibits or portions thereof attached which are not cited or referred to with particularity may not be considered."). Individual Defendants do not dispute their involvement with Capital Club, LLC, nor its formation in Wyoming. As to Plaintiff's Exhibits 13, and 14, relevance is again an issue. Plaintiff relies wholly on Capital Club, LLC being formed in Wyoming and Individual Defendants having ties to the LLC to support the relevance of the exhibits. [ECF No. 26, at 6–7]. The exhibits show financial transactions through the Wyoming LLC and are insufficient to meaningfully support Plaintiff's contentions. Likewise, from the lack of context provided in the attachment of income statement, card expense summary, and the Payoneer account statement, it is unclear whether the specific documents were referenced in the Complaint as required by the Local Rules. [ECF Nos. 22-14, 22-15].

By Plaintiff's account, Capital Club, LLC was involved in diverting funds from the business, and the personal funds within the LLC were used for Luke and Lara's personal expenses. [ECF No. 1, at 16–17]. Thus, the LLC was only used for fraud insofar as funds were fraudulently diverted through the entity. Individual Defendants claim the LLC was used a financial conduit for their expenses, and Plaintiff concedes the LLC was phased out of the business plan after one year. *Id*. at 5. Under Plaintiff's account of the facts, any "personal expenses" shown through the LLC would not in itself demonstrate misuse of the LLC, nor financial operations being tied to Wyoming-based activities. Moreover, there is no evidence tending to suggest the money shown in Capital Club, LLC was improperly diverted away from the parties' business.

As has been discussed, the Court finds general personal jurisdiction exists over Capital Club, LLC that may be imputed to Individual Defendants. In making these observations, the Court acknowledges it is taking Plaintiff's well-pled factual allegations as true at this stage of the proceedings but cautions the allegations will need to be substantiated with clarity as the lawsuit progresses. Thus, the Court has no need to consider the exhibits at issue and grants Defendants' Motion to Strike. [ECF No. 23].

### CONCLUSION

**NOW, THEREFORE, IT IS ORDERED** Defendants' Motion to Dismiss [ECF No. 18] the Claims against them is hereby **GRANTED** in part as to Plaintiff's claims for conversion, breach of fiduciary duties of care and loyalty, and civil conspiracy, and these claims are **DISMISSED**. Defendants' Motion to Dismiss is **DENIED** as to the remainder of Plaintiff's Complaint.

**IT IS FURTHERED ORDERED** Defendants' Motion to Strike Plaintiff's Exhibits 5, 13, and 14 of [ECF No. 23] is hereby **GRANTED**.

Dated this 6th day of January, 2026.

Kelly H. Rankin
United States District Judge