**FILED**



**10:26 am, 3/30/26**

**Margaret Botkins
Clerk of Court**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

---

TAN BOON KIAT, a.k.a. STEVE TAN, an individual,

      Plaintiff,

      v.

LUCAS EMANUEL URIA THEIS, a.k.a. LUKE BELMAR, an individual; LARA ELYSE URIA THEIS, a.k.a. LARA COLUMBO, an individual; and CAPITAL CLUB, LLC, a Wyoming Limited Liability Company,

      Defendants.

Case No. 25-CV-214-R

---

**ORDER GRANTING PLAINTIFF'S MOTION TO DISMISS DEFENDANTS'
COUNTERCLAIMS [32]**

---

Plaintiff Tan Boon Kiat ("Steve Tan") engaged in a business with Defendant Lucas Uria Theis (also known as "Luke Belmar"). The parties temporarily used Mr. Theis's Wyoming Limited Liability Company, Defendant Capital Club, LLC ("CC LLC"), to manage the business's finances. [ECF No. 1, at 5]; [ECF No. 19, at 3–4]. Mr. Theis's wife, Defendant Lara Uria Theis (also known as "Lara Columbo"), was allegedly indirectly involved in the business through her management of CC LLC. [ECF No. 1, at 3–4]. Plaintiff sued Defendants alleging they fraudulently forced him out of the business and improperly diverted shared assets. [ECF No. 1]. Defendants filed counterclaims with

parallel accusations. [ECF No. 29]. Plaintiff now motions the Court to dismiss the claims against him. [ECF Nos. 32, 33].

The Court having reviewed the parties' Motion, Response, and Reply, and being fully informed on the matter, grants Plaintiff's Motion.

## BACKGROUND

Plaintiff brings this action alleging Defendants fraudulently forced him out of their shared business without compensating him for his contributions. [ECF No. 1]. He asserts Mr. Theis was his primary business partner, and Ms. Theis and CC LLC were instrumental in the fraud perpetrated against him. Although Plaintiff concedes Mr. Theis solely formed CC LLC in 2021, he alleges the parties co-founded "Capital Club" (the entity central to this dispute) in 2022. *Id*. at 5; [ECF No. 19, at 2] (Defendants refer to the business as "Capital Club Business").

The business undertaken by Plaintiff and Mr. Theis was "focused on digital entrepreneurship, education, and community-building" and was structured so "[m]embers pay subscription fees in exchange for access to online courses, mentorship programs, networking opportunities, and exclusive digital content." [ECF No. 1, at 5]. Defendants claim the business was intended to use Hong Kong entities formed by Plaintiff to create an international, equal partnership in Hong Kong. [ECF No. 19, at 2]. They contend the business began in the United States and had its operations in Hong Kong, although the parties never formally or legally materialized the terms or structure of the business. *Id*.

The parties reference multiple entities comprising the business. Capital Club Holdings ("CC Holdings") was intended to be a holding company for several related entities. [ECF No. 29, at 12]. CC Holdings was also meant to house an investment branch called CC Ventures ("CCV"); a media house owned by Plaintiff called CC Shared Services; and an entity holding cryptocurrency funds called CC Apex. *Id*. Defendants allege the business contemplated Plaintiff and Mr. Theis would have equal ownership of the holding company. *Id*.

Control over the subsidiaries is divided. Defendants claim Plaintiff owned CC Shared Services, and he and his brother controlled CCIL and CC Holdings. [ECF No. 19, at 3–4]. Defendants assert CC LLC is owned and managed by Mr. Theis and Ms. Theis and was used as their personal financial conduit. *Id*. at 4. The parties initially used CC LLC as the "central financial repository." [ECF No. 1, at 5]. But this role was later transitioned to Capital Club International ("CCIL"). *Id*.; *see* [ECF No. 29, at 12]. Plaintiff contends management of the Wyoming LLC was eventually transferred from Mr. Theis to Ms. Theis "on paper" for tax purposes. [ECF No. 1, at 3–4]. Its involvement is relevant insofar as Plaintiff alleges Defendants used the entity to perpetuate fraud against him. *Id*. at 11–19.

Plaintiff claims the business flourished in part because of his personal and financial investments. *Id*. at 6. He alleges Mr. Theis secretly launched a competing entity called "Gem Hunters" while still engaged in the enterprise with Plaintiff. *Id*. at 2. He asserts Mr. Theis fraudulently diverted business resources and employees to the new venture. *Id*. at 7. Plaintiff states he intended to sell his business interest in late

2024, and Mr. Theis agreed to buy him out. Mr. Theis allegedly required Plaintiff to transfer his interest and business credentials before the sale. But once the transfer had been completed over several months, Plaintiff was allegedly locked out of the company systems and never paid for his contributions. *Id*. at 9. Plaintiff appears to assert Mr. Theis was his primary contact, but he conspired with Ms. Theis to lock him out of the company, and they used the Wyoming LLC to improperly divert company funds from CCIL. *See id*.

Plaintiff brought this action asserting claims against CC LLC, Mr. Theis, and Ms. Theis respectively for: (1) fraudulent inducement; (2) conversion; (3) breach of fiduciary duty of care; (4) breach of fiduciary duty of loyalty; (5) unjust enrichment; and (6) civil conspiracy. *Id*. at 11–19. Defendants moved to dismiss, and this Court dismissed Plaintiff's claims for conversion, breach of the fiduciary duties of care and loyalty, and civil conspiracy. [ECF No. 28].

Conversely, Defendants maintain the parties agreed Plaintiff would temporarily retain all the holding company shares due to the tax implications upon transfer. [ECF No. 29, at 12]. But they claim Plaintiff later failed to relinquish the shares. Shortly after this agreement was made, Defendants insist Plaintiff suggested moving all CC LLC's assets into the holding company—although Mr. Theis did not yet have his shares. *Id*. They refused but they reference this suggestion as evidence of Plaintiff's fraudulent intent. *Id*.

In addition, they state Plaintiff failed to support the business with proper financial operations, forcing Mr. Theis and Ms. Theis to travel and promote the brand

to recoup losses. *Id*. at 13–14. Along with operational and travel expenses, Mr. Theis contributed $225,000 to the business, along with time and other resources he expected to be compensated for. *Id*. at 16.

Defendants allege Plaintiff engaged an attorney to create a subscription option agreement. *Id*. at 14. They do not clarify the contents or subject matter of the proposed agreement. Defendants engaged their own attorney to review the terms and ultimately declined to sign it. *Id*. Later, they claim Plaintiff expressed his intent to no longer work and threatened Mr. Theis and the business while unlawfully retaining Mr. Theis's shares in the holding company. *Id*. at 15. During this time, Defendants claim they traveled to Malaysia several times attempting to negotiate a good-faith buyout. *Id*. at 13–15. Ultimately these efforts failed, and Defendants contend Plaintiff forced them out of the business, provided confidential company information to third parties, invested and drained money from CCV, and sold the shares of CC Holdings to a separate company owned by Plaintiff and his brother. *Id*. at 15–17.

After this business split occurred, Defendants claim Plaintiff launched a defamation campaign. *Id*. at 17–22. Defendants cite a series of social media posts and appearances by Plaintiff. Among them, Plaintiff posted on X encouraging people to share their negative experiences with Mr. Theis, and stated his intent to make a series of videos exposing Mr. Theis. *Id*. at 19–22. He also reposted a third-party account claiming an individual was scammed by Mr. Theis. *Id*. Defendants estimate their resulting damages total $12 million. *Id*. at 22.

Defendants filed counterclaims against Plaintiff alleging (1) fraudulent inducement, (2) unjust enrichment, (3) defamation, and (4) tortious interference. [ECF No. 29]. Plaintiff now motions the Court to dismiss Defendants' counterclaims with prejudice, alleging Defendants have a thin or improper basis for each claim. [ECF Nos. 32–33, 37].

**RELEVANT LAW**

### I.  *Motion to Dismiss*

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may challenge a complaint for the "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A plaintiff's claim is facially plausible when the court can reasonably infer the defendant's liability from the facts pled. *Id.* Plausibility does not equal probability. *Id.* A plaintiff must show more than a sheer possibility, conceivability, or speculation the defendant acted unlawfully. *Id.*; *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008). Labels, legal conclusions, and formulaic recitations of the elements are insufficient to survive a motion to dismiss. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start*,

*Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quotations and citations omitted). In reviewing a Rule 12(b)(6) motion, a court should "accept as true all well-pleaded factual allegations in a complaint in a light most favorable to the plaintiff." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).

### RULING OF THE COURT

The Court will address Plaintiff's challenges to Defendants' claims of (I) fraudulent inducement, (II) unjust enrichment, (III) defamation, (IV) tortious interference, and (V) other grounds for relief. First, Defendants fail to present a fraudulent misrepresentation supporting reasonable reliance. Second, unjust enrichment is not a proper cause of action because Defendants acknowledge an underlying agreement and fail to demonstrate there is no adequate remedy at law. Third, Defendants fail to demonstrate required elements of defamation per se and defamation per quod, including a showing of actual malice required for a public figure. And fourth, tortious interference relies on Defendant's failed defamation claim and fails to show any specific business losses.

### I.  *Fraudulent Inducement*

Fraudulent inducement requires a plaintiff present clear and convincing evidence "1) the defendant made a false representation intending to induce action by the plaintiff; 2) the plaintiff reasonably believed the representation to be true; and 3) the plaintiff suffered damages in relying on the false representation." *Berthel Land & Livestock v. Rockies Exp. Pipeline LLC*, 2012 WY 52, ¶ 50, 275 P.3d 423, 438 (Wyo. 2012) (citing *Bitker v. First Nat'l Bank in Evanston*, 2004 WY 114, ¶ 12, 98 P.3d 853, 856 (Wyo. 2004)). Clear and

convincing evidence suggests the truth of the allegation is "highly probable." *Id*. (citations omitted).

While a plaintiff must typically present a "short and plain statement of the claim" showing entitlement to relief, fraud claims require a heightened pleading standard. *See* FED. R. CIV. P. 8(a)(2); FED. R. CIV. P. 9(b). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). "At a minimum, Rule 9(b) requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud." *Tatten v. Bank of Am. Corp.*, 912 F. Supp. 2d 1032, 1040 (D. Colo. 2012) (quotations omitted) (quoting *United States ex rel. Schwartz v. Coastal Healthcare Grp., Inc.*, 232 F.3d 902, 2000 WL 1595976, at *3 (10th Cir. 2000) (unpublished table decision)). "To survive a motion to dismiss, an allegation of fraud must set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Id*. (quotations omitted) (quoting *Midgley v. Rayrock Mines, Inc.*, 374 F. Supp. 2d 1039, 1047 (D.N.M. 2005)).

Plaintiff challenges Defendants' fraudulent inducement claim. [ECF No. 33, at 4]. He claims Defendants do not identify any relevant details. His allegedly fraudulent statements, the date they were made, the medium, or how Defendants knew the statements were false in Plaintiff's mind at the time of expression are unidentified. *Id*. Plaintiff claims he could not have fraudulently induced Mr. Theis's business interest because Defendants state Plaintiff's retention of the shares was mutually agreed on for tax purposes. *Id*. at 4–5.

He contends reasonable reliance is also implausible because Defendants purport to be sophisticated businesspeople by (1) retaining separate legal counsel to review

agreements, (2) rejecting proposed contracts based on apparently slanted provisions, and (3) traveling to Malaysia several times to negotiate a buyout. *Id*. at 5. Plaintiff claims they broadly reference damages "without specifying what revenue was lost, what investments were made in reliance, or how those losses causally connect to any specific misrepresentation." *Id*. Finally, Plaintiff argues the economic loss rule bars re-packaging contract claims as fraud. *Id*. at 6–8.

Defendants assert Plaintiff falsely represented he and Mr. Theis were equal partners. [ECF No. 36, at 8]. They argue this misrepresentation was intended to induce Defendants to transfer all CC LLC's assets to Plaintiff's exclusive control. They likewise mention Plaintiff's presentation of the subscription option agreement and his insistence Defendants buy all the shares of the holding company as examples of misrepresentations supporting fraudulent inducement. *Id*. at 9–10.

Defendants claim they "reasonably relied on these representations based on their prior dealings with Mr. Tan and suffered resulting damages, including lost revenue, lost investments, and lost business opportunities." *Id*. at 11. They also insist no contract or partnership ever existed. Defendants argue judicial estoppel precludes Plaintiff's challenge because the Court already concluded these facts sufficiently supported Plaintiff's fraudulent inducement claim. *Id*. (referencing ECF No. 28).

The Court begins by addressing Defendants' (A) fraudulent inducement claim as pled before addressing (B) Plaintiff's economic loss argument, and (C) judicial estoppel.

9

## A. Fraudulent Inducement as Pled

The Court finds Defendants have not adequately pled fraudulent inducement to survive a motion to dismiss. First, there is no demonstration of any false representations made by Plaintiff to retain the holding company shares. By Defendants' own account, the decision for Plaintiff to retain the shares was mutual, based on avoiding negative tax implications. [ECF No. 29, at 12]. There is no indication Plaintiff suggested the presence of adverse tax consequences as a pretense for him to retain the shares. *Id*. (Defendants explain, "because of the tax implications and advice of advisors, Mr. Theis *and* Mr. Tan agreed that Mr. Theis would not immediately execute on his shares and that Mr. Tan would hold onto Mr. Theis's shares of this holding company.") (emphasis added). Instead, Defendants reference the advice of apparently objective "advisors" who are not alleged to have any independent connection to Plaintiff. *See id*. Thus, Defendants' allegations taken as true do not present facts demonstrating Plaintiff fraudulently induced Defendants' reliance at the inception of the business.

Second—considering the absence of a false representation inducing action— reliance is unreasonable. The parties were sophisticated, independently engaged counsel, and undertook buyout negotiations. The Court also finds Defendants' allegations on this point contradictory. Defendants mention reliance based on "prior dealings." [ECF No. 36, at 11]. Yet all prior dealings pled demonstrate Plaintiff's alleged unreliability.

Underscoring unreasonableness, Defendants include no facts demonstrating they relied on Plaintiff's representations. They did not transfer CC LLC's assets to CC Holdings; they did not sign the subscription option agreement; and Mr. Theis did not buy all shares

10

in CC Holdings. Primarily the reliance references back to Plaintiff's initial retention of the shares. [ECF No. 29, at 12]. And crucially, Defendants include virtually no relevant, supporting details, such as what was represented, at what time, or the medium of communication alleged. Defendants' major downfall is failing to provide details suggesting the fraud was present at the inception of the business. Because of this, it is impossible for Defendants to plausibly allege reasonable reliance.

Defendants claim Plaintiff's misrepresentations caused "resulting damages, including lost revenue, lost investments, and lost business opportunities." [ECF No. 36, at 11]. Both the representations and the damages referenced by Defendants are too vague to support a prima facie claim for fraudulent inducement.

## B. Economic Loss Rule

Even if a prima facie case were established, Plaintiff's economic loss rule argument weakens Defendants' claim. "The 'economic loss rule' bars recovery in tort when a plaintiff claims purely economic damages unaccompanied by physical injury to persons or property." *Skyco Res., LLP v. Fam. Tree Corp.*, 2022 WY 72, ¶ 46, 512 P.3d 11, 27 (Wyo. 2022) (quotations omitted) (quoting *Rogers v. Wright*, 2016 WY 10, ¶ 30, 366 P.3d 1264, 1275 (Wyo. 2016)). But "the rule does not necessarily bar a claim for intentional misrepresentation, subject to the caveat that the liability must be premised on a duty independent of contractual duties." *Id*.

Within Defendants' allegations, the parties apparently established an agreement Mr. Theis and Plaintiff would have equal ownership in the holding company. [ECF No. 29, at 12]. As stated, under this claim, Defendants suggest Plaintiff's primary offense was failing

11

to relinquish control of the shares. [ECF No. 36, at 10–11]. This appears to be the essence of their agreement.

"The 'economic loss rule' is 'founded on the theory that parties to a contract *may* allocate their risks by agreement and do not need the special protections of tort law to recover for damages caused by a breach of the contract.'" *Excel Const.*, *Inc. v. HKM Eng'g*, *Inc.*, 2010 WY 34, ¶ 15, 228 P.3d 40, 45 (Wyo. 2010) (emphasis added) (citations omitted); *Skyco Res.*, *Ltd. Liab. P'ship*, 2022 WY 72, at ¶ 49 (stating the economic loss rule's purpose is to encourage parties "to negotiate the risk distribution that is desired or customary").

Although Defendants contest the presence of a contract, they claim the parties' agreement to equal ownership in CC Holdings underlies the entire business operation. By Defendants' own account, the alleged agreement (for Plaintiff to *temporarily* hold the shares) is the same as Plaintiff's failure (refusing to transfer the shares). The alleged agreement and the alleged failure mirror each other. Because of this, there is no independent contractual duty supporting a claim for intentional misrepresentation under this theory. *Skyco Res.*, *Ltd. Liab. P'ship*, 2022 WY 72, at ¶ 51. Thus, the economic loss rule secondarily bars Defendants' fraudulent inducement claim.

## C. Judicial Estoppel

"Judicial estoppel is a narrow equitable doctrine that bars a party from asserting inconsistent factual positions in subsequent proceedings when the prior position was successfully adopted by a court." *Velasquez v. State*, 2026 WY 11, ¶ 26, 582 P.3d 915, 921 (Wyo. 2026) (citing *Matter of JDV*, 2025 WY 46, ¶¶ 13–14, 567 P.3d 666, 670 (Wyo. 2025)

("estoppel applies only to irreconcilable factual assertions that were conclusive in a prior proceeding")). Judicial estoppel is not presently at issue.

Defendants argue Plaintiff's challenge is barred by judicial estoppel, claiming it "lacks merit and attempts to evade the same facts this Court already found sufficient to let his own fraudulent inducement claim proceed." [ECF No. 36, at 8] (citing *Velasquez*, 2026 WY 11, at ¶ 26). Plaintiff contends, "[a] Rule 12(b)(6) ruling denying dismissal is not the adoption of any party's position on the merits." [ECF No. 37, at 3]. He asserts because Rule 12(b)(6) does not create the required merits determination, judicial estoppel is not applicable. *Id*. Further, he claims the parties' fraudulent inducement claims "are based on entirely different alleged misrepresentations by different parties." *Id*.

"[J]udicial estoppel, 'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.'" *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting *Pegram v. Herdrich*, 530 U.S. 211, 227, n. 8 (2000)). Defendants' estoppel argument fails for several reasons, but fundamentally because the positions taken are distinguishable.

In the Complaint, Plaintiff alleged Mr. Theis made representations he would purchase Plaintiff's business interest without intending to purchase it. [ECF No. 1, at 7–9].

Plaintiff alleged:

> [T]he Complaint details the *who* (Lucas Theis, acting individually and through Capital Club LLC), the *what* (false promise of a written buyout agreement), the *when* (August 2024[–]June 2025), the *where* (communications during the handover of Capital Club's backend systems), and the *how* (Defendants used the sham buyout to obtain administrative credentials, databases, and control).

[ECF No. 22, at 21] (emphasis in original) (citing ECF No. 1, at ¶¶ 50–67, 81–87).

The Court found Plaintiff "reasonably relied on these representations, based on the sample term sheet provided to him and the parties' previous dealings, and he suffered damages in the form of loss of access and management of the business and not being compensated for his interest." [ECF No. 28, at 14]. Under those facts, Plaintiff's reliance on the representation he would be compensated after the transfer was reasonable. And the term sheet allegedly presented by Defendants increased the perceived legitimacy of the pending buyout. Thus, it supported Plaintiff's reasonable reliance on Defendants' eventual payment purportedly inducing Plaintiff to turn over his control of company assets and interfaces. *See id.*

Plaintiff's challenge to Defendants' fraudulent inducement claim does not give rise to judicial estoppel because, to begin with, Plaintiff's argument does not take a contradictory position. The facts presented by Defendants do not clearly evidence a fraudulent misrepresentation nor reasonable reliance. As stated, Defendants concede the decision for Plaintiff to retain all the shares was mutual, based on avoiding negative tax implications. [ECF No. 29, at 12]. Defendants do not suggest Plaintiff was the driving force behind this retention, and they further reference the involvement of third-party advisors. *Id.* Defendants also provide ample allegations suggesting they repeatedly suspected fraudulent behavior from Plaintiff—increasing the unreasonableness of their reliance.

The facts pled are insufficient to establish a prima facie showing of fraudulent inducement. *See id.*; *Berthel Land & Livestock*, 2012 WY 52, at ¶ 51 ("A party's breach, standing alone, tells us little regarding that party's intentions or state of mind when

14

negotiating the contract. The clear and convincing burden of proof requires evidence that makes it highly probable [Defendant] lied during negotiations."). Thus, Defendants' fraudulent inducement claim is dismissed.

## II. Unjust Enrichment

"Unjust enrichment (or quantum meruit) is an equitable remedy which implies a contract so that one party may recover damages from another." *Elec. Wholesale Supply Co. v. Fraser*, 2015 WY 105, ¶ 27, 356 P.3d 254, 261 (Wyo. 2015). Unjust enrichment requires proof:

> (1) Valuable services were rendered, or materials furnished,
> (2) to the party to be charged,
> (3) which services or materials were accepted, used and enjoyed by the party, and,
> (4) under such circumstances which reasonably notified the party to be charged that the plaintiff, in rendering such services or furnishing such materials, expected to be paid by the party to be charged.

*Id*.; *Statzer v. Statzer*, 2022 WY 117, ¶ 13, 517 P.3d 574, 579 (Wyo. 2022).

Plaintiff claims Defendants' description of every benefit rendered fits within a partnership structure. He cites Defendants' reliance on: (1) the parties' agreement to equally own the holding company, (2) description of the operational expenditures within that arrangement, and (3) Mr. Theis's $225,000 investment with the stated expectation of being repaid as an equal partner. [ECF No. 33, at 8]. Plaintiff asserts "the dispositive issue is not whether the contract was executed. It's whether Counterclaim Plaintiffs' own allegations invoke an agreement as the basis for the claimed expectation of repayment." [ECF No. 37, at 5]. Plaintiff argues because Defendants acknowledge the partnership structure, unjust enrichment is not available as an equitable remedy. [ECF No. 33, at 9]. As support he claims

15

Defendants do not demonstrate they lack an adequate remedy at law. [ECF No. 37, at 6]. And he maintains conversion, not unjust enrichment, is the proper cause of action where the accused has legal title initially. *Id*.

Defendants claim Mr. Theis rendered financial contributions, funded cryptocurrency transactions, and advanced sums for travel expenses. [ECF No. 36, at 12]. They assert, "Mr. Tan directly received and benefitted from those contributions by using and retaining funds in furtherance of the Capital Club venture." *Id*. Defendants conclude, "Mr. Tan accepted, used, and enjoyed those benefits with full knowledge of their source and purpose." *Id*.

While Defendants present evidence of valuable services and materials rendered, their unjust enrichment claim fails as early as the second element. Defendants' contradictory acknowledgment of a business agreement or partnership complicates this claim. *Compare* [ECF No. 36, at 11] ("Mr. Theis contributed to Mr. Tan's Capital Club venture through cryptocurrency transactions and by advancing hundreds of thousands of dollars for operational and travel expenses, with the expectation of repayment as part of his anticipated partnership[.]") *with id*. at 2 ("Defendants have never alleged that a partnership actually existed."). Despite this, Mr. Theis rendered contributions to the business—not to Plaintiff. *Cf. Metz Beverage Co. v. Wyoming Beverages, Inc.*, 2002 WY 21, ¶ 38, 39 P.3d 1051, 1061 (Wyo. 2002) (stating the defendant "has not been unjustly enriched since it already owns the [asset at issue] and can do with it as it wants. Therefore, the last element of an unjust enrichment claim could not be proven.") (alteration added).

16

The Court finds Defendants failed to demonstrate an inadequate remedy at law and likewise failed to distinguish the transfer of resources to the company versus to Plaintiff. Because Defendants' allegations suggest the business had legal title to the assets at the time they were transferred, and Plaintiff simultaneously had lawful possession of all shares in CC Holdings, a conversion cause of action was likely a closer fit for the factual assertions presented. *See Campbell v. Davidson*, 2023 WY 100, ¶ 36, 537 P.3d 734, 745 (Wyo. 2023); *Johnson v. Reiger*, 2004 WY 83, 93 P.3d 992, 1000 (Wyo. 2004). Defendants' unjust enrichment claim is dismissed.

## III.    *Defamation*

"A defamatory communication is one which tends to hold the plaintiff up to hatred, contempt, ridicule or scorn or which causes him to be shunned or avoided; one that tends to injure his reputation as to diminish the esteem, respect, goodwill or confidence in which he is held." *Hoblyn v. Johnson*, 2002 WY 152, ¶ 41, 55 P.3d 1219, 1233 (Wyo. 2002). Defendants allege defamation per se and defamation per quod. The Court will examine each.

### A.  **Foundational Defamation Elements**

#### 1.  *Defamation Per Se*

"Defamation per se means a statement is defamatory on its face and, therefore, actionable without proof of special damages." *Thomas v. Sumner*, 2015 WY 7, ¶ 49, 341 P.3d 390, 402 (Wyo. 2015) (quotations and citations omitted). "The only statements classified as defamatory per se or damaging on their face, and which therefore do not require proof of special harm, are those which impute (1) a criminal offense; (2) a

17

loathsome disease; (3) a matter incompatible with business, trade, profession, or office; or (4) serious sexual misconduct." *Id*. (quoting *Hoblyn*, 2002 WY 152, at ¶ 41).

Defendants argue they satisfy the elements of defamation per se because their business reputation is being implicated in the criminal misconduct alleged. [ECF No. 36, at 18]. They support this through "the loss of interests and assets with economic or pecuniary value, including, but not limited to, their business dealings with entrepreneurs, demonstrating the required special harm[.]" *Id*. They claim Plaintiff made false and defamatory communications implicating Mr. Theis's alleged dishonesty and financial misconduct on social media platforms.

Specifically, they cite Plaintiff's post reading, "[t]he lawsuit against Luke Belmar, his wife, and Capital Club LLC is now public. Every lie. Every manipulation. Every dollar taken. How me and my brother were completely forced out by Luke and his wife, Lara Colombo." *Id*. They maintain the publications were unprivileged and Plaintiff knew the communication was false at the time he made the posts and other social media appearances. *Id*.

Plaintiff rebuts Defendants claim by stating "[l]oose accusations of being a 'scammer' or general dishonesty are not necessarily equivalent to accusing someone of a specific, cognizable criminal offense." [ECF No. 33, at 13] (citation omitted). He concludes Defendants' defamation per se assertion fails to state with particularity which statements give rise to the claim, and which criminal offense is being imputed. *Id*. at 13–14.

Because the categories of defamation per se are separate and distinct, the Court will begin by examining the imputation of criminal conduct as a potential basis for the claim. *See Lewis v. Francis*, 2025 WY 109, ¶ 20, 577 P.3d 433, 438 (Wyo. 2025).

### i. Imputation of Criminal Conduct

The Court finds Defendants sufficiently allege defamation per se based on imputation of criminal conduct. "The Restatement does not require technical precision in a statement accusing one of criminal conduct, but it must be apparent from the statement that the crime was one punishable by imprisonment or involving moral turpitude." *Hill v. Stubson*, 2018 WY 70, ¶ 36, 420 P.3d 732, 743 (Wyo. 2018) (citing Restatement (Second) of Torts § 571 cmt. c) ("It is not necessary that the defamer charge any particular criminal offense either by name or description, if the words used imply some crime of the type stated in Clauses (a) [punishable by imprisonment] and (b) [involving moral turpitude].")).

Here, Plaintiff's statements implicate theft under false pretenses—although it is not stated directly. Defendants mention Plaintiff's statements related to their alleged manipulation, theft, and a purported scam involving a third party. Thus, the Court finds Defendants' defamation per se claim may be based on the imputation of criminal conduct.

### ii. Elements of Defamation Per Se

Provided a claim fits within one of the specified categories of defamation per se, a plaintiff must also prove:

> (1) the defendant made a false and defamatory communication concerning the plaintiff; and (2) the defendant made an unprivileged publication to a third party; and (3) at the time of the publication the defendant knew the communication was false, or the defendant acted in reckless disregard of

19

whether the statement was false; or the defendant acted negligently in failing to ascertain whether the communication was false.

*Thomas*, 2015 WY 7, at ¶ 49 (citations omitted).

Plaintiff argues his statements are non-actionable opinion and rhetorical hyperbole. [ECF No. 33, at 14]; [ECF No. 37, at 8]. Plaintiff contends some of his statements are protected by the Litigation Privilege and the Fair Report Privilege. [ECF No. 33, at 14–15]. He also alleges Ms. Theis and CC LLC have no individualized defamation allegations. *Id*. at 15. Defendants assert Plaintiff's statements are neither privileged nor fair reporting of the proceedings. [ECF No. 36, at 18]. They explain privilege applies only to statements made in the course of judicial proceedings that are relevant to the proceedings. *Id*. (citing *May v. Se. Wyoming Mental Health Ctr.*, 866 P.2d 732, 739 (Wyo. 1993)). Plaintiff argues *May* is irrelevant—discussing statutory immunity under the Child Protective Services Act and witness statements made outside the proceedings at issue. [ECF No. 37, at 9]. He claims, "directing an audience to read a federal complaint is the definition of fair reporting on a public judicial proceeding." *Id*.

Plaintiff offers the following analysis for the specific statements presented:

"The mask finally slips" (¶ 40): classic rhetorical hyperbole; no verifiable fact asserted. "Every lie. Every manipulation. Every dollar taken." (¶ 40): dramatic framing directing readers to a publicly filed lawsuit, not an independent assertion of fact. "I'm standing up against a bully" (¶ 42): pure self-characterization and opinion. "Drop your story in the comments" (¶ 43): a solicitation of others' opinions, not a statement of fact by Mr. Tan. "A lot of what Mr. Theis shares is smoke and mirrors" (¶ 45): quintessential opinion language. "Scammer" (¶ 48): used in the context of an ongoing public business dispute by a sophisticated party; rhetorical opinion rather than a verifiable statement of objective fact.

*Id*. at 8–9.

20

The Wyoming Supreme Court recognizes First Amendment protection for statements of opinion, imaginative expression, or rhetorical hyperbole. *Dworkin v. L.F.P., Inc.*, 839 P.2d 903, 914 (Wyo. 1992). In determining the applicability of this protection, "a court must scrutinize the type of language used, the meaning of the statement in context, whether the statement is verifiable, and the broader social circumstances in which the statement was made." *Id*.

Here, context is important. The parties assert parallel accusations claiming the other unlawfully exerted control over their shared business. *Cf. id*. at 916 ("The statements in question were uttered in the context of an ongoing debate in which Dworkin seeks to destroy the industry of which Hustler is a part. In response, Hustler seeks to destroy Dworkin's viewpoint by vilifying its advocate."). "In such a heated and spirited confrontation, of which the statements are a part, abusive epithets, exaggerated rhetoric and hysterical hyperbole are expected." *Id*. Defendants do not attempt to identify specifically actionable statements with this in mind.

The statement most likely to be verifiable with the strongest criminal implications is the third-party direct message claiming they were scammed by Mr. Theis, which Plaintiff reposted. This assertion, however, was not made directly by Plaintiff and is most appropriately addressed in the Court's analysis of actual malice below.

21

## 2. *Defamation Per Quod*

In contrast to defamation per se, defamation per quod "is actionable only if the plaintiff suffers special harm, meaning the 'loss of something having economic or pecuniary value.'" *Hill*, 2018 WY 70, at ¶ 25 (quoting *Hoblyn*, 2002 WY 152, at ¶ 41).

Plaintiff argues Defendants' only damages allegation estimates losses over $12 million. [ECF No. 33, at 13]. He states "[t]his allegation is wholly conclusory: it does not identify which statements caused which damages, what specific reputational harm occurred, what specific business relationships were lost, when they were lost, or how the $12 million was derived." *Id*. He concludes the claim "fails the pleading standard for per quod claims under *Hoblyn*, 55 P.3d at 1233." *Id*.

The Court finds Defendants' vague damages statement fails to plead special damages required for defamation per quod. *Hill*, 2018 WY 70, at ¶ 25. Related to Defendants' defamation per se claim, out of an abundance of caution, the Court will address the actual malice requirement for public figures.

## B. Public Figure Designation

In addition to the standard elements, public figures must demonstrate the defendant acted with actual malice. The public figure:

> [D]esignation may rest on either of two alternative bases. In some instances an individual may achieve such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts. More commonly, an individual voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues. In either case such persons assume special prominence in the resolution of public questions.

*Adams v. Frontier Broad. Co.*, 555 P.2d 556, 560 (Wyo. 1976) (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974)).

### 1. Public Controversy

"The first step in determining if a plaintiff is a public figure is to discern whether or not there is a public controversy." *Martin v. Comm. for Honesty & Just. at Star Valley Ranch*, 2004 WY 128, ¶ 11, 101 P.3d 123, 128 (Wyo. 2004). "[A] public controversy is a dispute that in fact has received public attention because its ramifications will be felt by persons who are not direct participants." *Id.* (citing *Waldbaum v. Fairchild Publications, Inc.*, 627 F.2d 1287, 1296 (D.C. Cir. 1980); *Trotter v. Jack Anderson Enterprises, Inc.*, 818 F.2d 431, 433–34 (5th Cir. 1987); *Silvester v. American Broad. Companies, Inc.*, 839 F.2d 1491, 1494 (11th Cir. 1988); *Barry v. Time, Inc.*, 584 F. Supp. 1110, 1115–16 (N. Dist. Cal. 1984)).

"Public allegations that someone is involved in crime generally are speech on a matter of public concern." *Obsidian Fin. Grp., LLC v. Cox*, 740 F.3d 1284, 1292 (9th Cir. 2014) (citing *Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1298 (11th Cir. 2008), and *Boule v. Hutton*, 328 F.3d 84, 91 (2d Cir. 2003)); *see Dworkin*, 839 P.2d at 920 ("Where the challenged statements criticize public officials or public figures in matters of public concern, the interest in private reputation is overborne by the larger public interest, secured by the Constitution, in the dissemination of the truth.") (quotations and citations omitted).

Plaintiff argues Mr. Theis is a public figure and must demonstrate actual malice. [ECF No. 33, at 11] ("Mr. Theis has a large public following, operates a public-facing

entrepreneurship brand, and is the 'face' of Capital Club[.]"). Defendants do not contest this designation and argue actual malice has been shown. [ECF No. 36, at 15].

Here, a matter of public concern exists. Defendants allege their business has been overtaken and they have been frozen out of it. [ECF No. 29]. Their digital promotion and travel over several years appear to have centered on the business's growth. Because of this, consumers appear to be at a heightened risk of deception if they choose to purchase memberships in Capital Club Business or otherwise contribute to the business's efforts. Plaintiff's allegations are fundamentally the inverse of those leveled against him. Thus, a public controversy exists related to alleged illicit business underpinnings affecting consumers.

Under these facts Mr. Theis would be considered a limited public figure because he voluntarily injected himself, or was drawn into, the public controversy relating to the business's management. Having established Mr. Theis is a limited public figure, Defendants must demonstrate Plaintiff acted with actual malice.

### 2. Actual Malice

"Actual malice means the allegedly defamatory statement was made 'with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Hill*, 2018 WY 70, at ¶ 21 (citations omitted). Determining actual malice is a subjective inquiry inextricably tied to the defendant's state of mind. *Id*. Accordingly, "bad or corrupt motives, spite, hostility, ill will, or deliberate intention to harm are not material to a determination of actual malice." *Id*. at ¶ 22 (quotations and citations omitted).

24

Plaintiff asserts actual malice must "be established with respect to each actionable statement." [ECF No. 37, at 7] (citations omitted). Defendants claim Plaintiff acted with actual malice in making the social media statements "as he knew they were false." [ECF No. 36, at 16]. In support, they reference Plaintiff reposting a third party rehashing an alleged scam by Mr. Theis. They claim he knew the scam was false for two reasons. *Id*. at 17. First, they argue Plaintiff was aware Mr. Theis does not personally accept cryptocurrency payments and only operates transactions through his business. Second, because Plaintiff previously hired a third-party company to flag Mr. Theis-impersonator scammers, they argue he should have known the scammer was not Mr. Theis. *Id*. Defendants claim Plaintiff is using social media attention to promote his own interests and business, and this is further evidence of his malicious intent. *Id*.

> As stated in the Counterclaim, the third-party message states:
>
> I stupidly gave him my life savings at the time (£32,000) in BNB. And the moment after I sent it to him the communication between each of us was very quiet. He used to only respond to me maybe once every few weeks. I kept chasing him for updates on the crypto and within 5 months of me waiting he blocked me and I lost everything[.]

[ECF No. 29, at 22].

While this and other statements posted online certainly implicate criminal activity, there is an insufficient showing of actual malice. As to Defendants' first contention, the post provides no information about whether the alleged victim sent money directly to the business, or to an individual. Their contention Plaintiff knew Mr. Theis did not personally accept cryptocurrency payments is relevant only if the third-party specifically alleged the payment was sent directly to Mr. Theis. No such supporting detail is included. On their

25

second point, there are also no details as to whether the third party had evidence they were interacting with a verified or unverified account.

Defendants present insufficient evidence of actual malice required for a public figure to sustain their defamation claims. Thus, Defendants' defamation claims are dismissed.

## IV. Tortious Interference

The elements of tortious inference are:

(1) The existence of a valid contractual relationship or business expectancy;
(2) knowledge of the relationship or expectancy on the part of the interferer;
(3) intentional and improper interference inducing or causing a breach or termination of the relationship or expectancy; and
(4) resultant damage to the party whose relationship or expectancy has been disrupted.

*Downs v. Homax Oil Sales, Inc.*, 2018 WY 71, ¶ 21, 421 P.3d 518, 524 (Wyo. 2018) (quoting *Gore v. Sherard*, 2002 WY 114, ¶ 13, 50 P.3d 705, 710 (Wyo. 2002)).

Defendants essentially argue Plaintiff was aware they had business connections in the market. Because Plaintiff knew of these connections and the business's goals, they conclude he intentionally interfered with their efforts by launching a defamation campaign against them. [ECF No. 36, at 20].

Plaintiff claims Defendants fail to present any specific prospective relationships that were disrupted. [ECF No. 33, at 15–16]. He asserts Defendants' claim "merely repeats [] generic characterizations without naming a single specific relationship, customer, subscriber, or business partner whose engagement . . . was disrupted by any specific statement." [ECF No. 37, at 10]. He states, "[t]he entire theory of tortious interference rests

26

on the same public statements underlying the defamation claim." [ECF No. 33, at 16]. He reasons if the defamation claims fail, tortious interference must fail as a necessary corollary. Plaintiff claims the damages pled are again limited to the conclusory $12 million figure provided in the context of the defamation claim. *Id*.

The Court finds Defendants do not plead the existence of a valid business expectancy nor resulting damages with the requisite detail. Whether improper interference occurred is a question of fact. *See Gore*, 2002 WY 114, at ¶ 14. Defendants do not provide enough factual allegations to allow the Court to find tortious interference. They offer no information detailing pending contracts, mergers, deals, conferences, or any tangible, anticipated business growth. Instead, they seem to vaguely reference the business's perpetual opportunity to gain greater recognition and following through individual memberships. But Defendants do not clearly outline the contours of this interference. As a result, the claim is dismissed. *See id*. at ¶ 15 ("The Gores' unilateral belief and hope that a contact would result was inadequate to sustain a cause of action.").

## V. *Additional Grounds*

Within Plaintiff's Motion, he requested several alternative grounds for relief. Among them, he (1) challenged Ms. Theis and CC LLC's standing to sue, (2) motioned to strike a portion of the Counterclaim's background section, (3) motioned for a more definite statement, and (4) offered a rebuttal to Defendants' preservation of personal jurisdiction challenges for appellate purposes. [ECF No. 33, at 16–22]. Plaintiff also requested dismissal of Defendants' claims with prejudice. *Id*. at 18. The Court finds Plaintiff's first

three additional grounds are rendered irrelevant by the dismissal of Defendants' Counterclaims. Plaintiff's fourth rebuttal is not currently before the Court.

But the Court will briefly address Plaintiff's request for Defendants' claims to be dismissed with prejudice. *See id*. The amendment of pre-trial pleadings is governed by Federal Rule of Civil Procedure 15(a). Under the Rule, a party may amend a pleading "once as a matter of course" within the designated timelines. FED. R. CIV. P. 15(a)(1). Outside this timeframe, "[o]ther amendments are allowed 'only with the opposing party's written consent or the court's leave.'" *Harms v. Sysco Kansas City*, *Inc*., No. 24-CV-2452-KHV-TJJ, 2025 WL 1798325, at *1 (D. Kan. June 30, 2025) (quoting FED. R. CIV. P. 15(a)(2)).

"[U]pon a showing of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" the Court may deny leave to amend. *Id*. (citation omitted). "A complaint or amendment [] need only make a statement of the claim and provide some factual support to withstand dismissal. It does not matter how likely . . . the party is to actually receive such relief, because for the purposes of determining whether to dismiss, all allegations are considered to be true." *Id*. (footnotes omitted).

Presently, the Court declines to dismiss Defendants' claims with prejudice. In doing so, the Court emphasizes the clarity and particularity required for each asserted claim.

## CONCLUSION

**NOW, THEREFORE, IT IS ORDERED** Plaintiff's Motion to Dismiss [ECF No. 32] is **GRANTED**.

**IT IS FURTHER ORDERED** Defendants' Counterclaims [ECF No. 29] are **DISMISSED** without prejudice.

Dated this 30th day of March, 2026.

Kelly H. Rankin
United States District Judge

29